## Case No. 5,657.

### Ex parte GRAHAM.

[3 Wash. C. C. 456; 4 Wash. C. C. 211.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1818.

#### HABEAS CORPUS.

1. The petitioner was arrested by the marshal of the district of Pennsylvania, under an attachment from the circuit court of Rhode Island, for a contempt; in not appearing in that court, after a monition served upon him in the state of Pennsylvania, to answer in a prize cause, as to a certain bale of goods condemned to the captors, and which had come into the possession of Peter Graham, the relator.

2. The circuit and district courts of the United States, cannot, either in suits at common law or equity, send their process into another district; except where specially authorized so to do, by some act of congress.

[Followed in Picquet v. Swan, Case No. 11,134; Wilson v. Pierce, Id. 17,826. Approved in Paine v. Caldwell, Id. 10,674. Cited in New England Mut. Ins. Co. v. Detroit & C. Steam Nav. Co., 18 Wall. (85 U. S.) 306; Atkins v. Fiber Disintegrating Co., Id. 304; Re Hodges, Case No. 6,562; Re Manning, 44 Fed. 276; Walker v. Lea, 47 Fed. 649; Re Boles, 1 C. C. A. 48, 48 Fed. 76.]

[Cited in Turrill v. Walker, 4 Mich. 180.]

3. The same restrictions as to proceedings in prize causes exist, not only by the express provisions of law, but also by the principles which apply to prize causes in this country, in England, and elsewhere.

At law.

Chauncey and Binney, for Graham.

Charles J. Ingersoll, against discharge.

WASHINGTON, Circuit Justice. To the writ of habeas corpus, issued by this court, upon the petition of Peter Graham, the marshal has returned, that he arrested the petitioner under the authority of a warrant of attachment, issued from the circuit court of the United States, for the district of Rhode Island, to him directed, and which is annexed to the return, and is in the following words, to wit:

"United States of America. (L. S.) Rhode Island District—ss. The President of the United States of America, to the Respective Marshals of the Respective Districts of Rhode Island, New-York, and the Eastern and Western Districts of Pennsylvania, Greeting: Whereas, a certain bale or box of merchandise, marked, and numbered 97—imported into the United States in the ship Francis, and condemned to the captors, in the case of the libel of Oliver Wilson and others against the ship Francis and cargo [The Francis, Case No. 5,032], in the circuit court of the United States, for the Rhode Island district, at the June term of 1813 of said court. And whereas, the said bale or box of merchandise was delivered to one James Stewart, by the

inspectors of the district of Bristol, by mistake, who took and carried away the same; and whereas, a representation to the said circuit court, at their November term, 1813, by the said Oliver Wilson, in behalf of the said captors, and on their petition therefor, the said court granted a monition to said James Stewart, to show cause, why he should not bring said bale or box of merchandise, or the proceeds thereof, into the said court,—which monition was duly served upon the said James Stewart; and whereas, the said James Stewart neglected to appear to said monition, and was, and ever since has been, in contempt therein; said court, upon petition therefor, in behalf of the said captors, granted a writ of attachment against the said James Stewart, which he hath avoided by absconding and departing from the United States; and whereas, afterwards, at the November term, 1816, of said circuit court, it was represented to said court, by the proctors of the said James Stewart, that said bale or box of merchandise, or the proceeds thereof, were in the hands of one Peter Graham, of Philadelphia, merchant, and praying process against him; and whereas, said court, at said term, granted a monition to the said Peter Graham, to bring said bale or box of merchandise, or the proceeds thereof, into said court, or, in default thereof, to appear. to show cause, why an attachment should not issue against him; and whereas, the said monition was duly served upon the said Peter Graham, and he hath neglected to appear thereto, and was and is in contempt therein; and whereas, application hath been made to the said court, at their June term, 1818, in behalf of said captors and said James Stewart, for further proceedings against the said Peter Graham, in the premises; and the said court, at the said term last mentioned, at the instance of the said applicants, did order a writ or warrant of attachment to issue against the said Peter Graham, for said contempt; and, in case the said Peter Graham could not be found, did further order, that the same writ or warrant of attachment should contain a clause, in that event, to seize, arrest, and sequester the goods and effects of the said Peter Graham, to the amount and value of two thousand dollars, wherever the same might or could be found within the United States, and the same safely to keep, to abide the further orders of the said court,—you are, therefore, hereby commanded, in the name of the president of the United States, that you do attach and arrest the said Peter Graham, if he may be found in your district, and to hold him in close custody, to answer the said court for his contempt aforesaid. And if the said Peter cannot be found within your district. then that you do seize, and arrest, and sequester the goods and effects of the said Peter, if the same may be found in your district, to the amount and value of two thousand dollars, the same safely to keep.

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

to abide the further orders of said court, in the premises. Hereof fail not, but true return make of this warrant, with your doing thereon, to the next term of the said circuit court, to be holden at Providence, within and for the said Rhode Island district, on the fifteenth day of November next.

"Witness, the Honourable John Marshall, Esq. our Chief Justice, this ninth (L. S.) day of July, in the year of our Lord, one thousand eight hundred and eighteen. Signed, Benjamin Cowell, Clerk."

The question turns upon the authority of the district or circuit court of one district, to issue its process into any other district, to compel the appearance of a person residing or found within the latter jurisdiction, before the court from which the process issued; or to stand committed, for any alleged contempt of that court. It is admitted, that these courts, in the exercise of their common law and equity jurisdiction, have no authority, generally, to issue process into another district, except in cases where such authority has been specially bestowed, by some law of the United States. The absence of such a power, would seem necessarily to result from the organization of the courts of the United States; by which two courts are allotted to each of the districts, into which the United States are divided; the one denominated a district—the other a circuit court. This division and appointment of particular courts, for each district, necessarily confines the jurisdiction of the local tribunals, within the bounds of the respective districts, within which they are directed to be holden. Were it otherwise, and the court of one district, could send compulsory process into any other, so as to draw to itself a jurisdiction over persons, or things, without the limits of the district, there would result a clashing of jurisdiction between those courts, which could not easily be adjusted; and an oppression upon suitors, too intolerable to be endured. But the legislature of the United States, from abundant caution, as it would seem, has not left this subject to implication. After conferring upon those courts, respectively, the portion of jurisdiction which congress intended they should exercise, the 11th section of the act of 24th September, 1789, c. 20 [1 Stat. 73], declares, "that no person shall be arrested in one district, for trial in another, in any civil action, before a circuit or district court; nor can a civil suit be brought before either of those courts, against an inhabitant of the United States, by any original process, in any other district, than that whereof he is an inhabitant; or in which he shall be found, at the time of serving the writ." These provisions appear manifestly to circumscribe the jurisdiction of those courts, as to the person of the defendant, by the limits of the district where the suit is brought; and that the process of those courts, was considered by the legislature, to be bounded by the same limits, is obvious from the subsequent acts passed; the one on the 2d of March, 1793 (chapter 22, § 6 [1 Stat. 335]), authorizing subpoenas for witnesses, to attend the courts of one district, to run into any other district, not exceeding, in civil cases, one hundred miles from the place of holding the court; and the other, on the 3d of March, 1797 (chapter 74, § 6 [2 Bior. & D. Laws, 594; 1 Stat. 515, c. 20]), which authorizes writs of execution upon judgments obtained, at the suit of the United States, in any of their courts, in one state, to run and be executed in any other state or territory. It would seem, that these provisions were made, not because they were supposed by congress to be necessary, in consequence of the 11th section of the judiciary law; but because the jurisdiction of the courts, was essentially confined, by their organization, within the limits of their respective districts; for, it is to be observed, that that section applies exclusively to original suits, and to the parties in those suits; and therefore imposed no restraint, in respect to writs of execution, and subpoenas for witnesses, which could render the above provisions at all necessary.

But it has been argued, that these restraints are incompatible with the essential jurisdiction of an admiralty court, more especially in prize causes. That the laws of the United States authorize the distinction which is contended for, between the courts of common law and equity; and the admiralty jurisdiction in prize cases, has not, and it is confidently believed, cannot be shown. It is true, that the 9th section of the judiciary act, gives to the district courts, exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, without limitation; and it is not less true, that the 11th section gives to the circuit courts, original cognizance of all suits of a civil nature, at common law and in equity, where an alien is a party, or the suit is between a citizen of the state where the suit is brought, and a citizen of another state, equally unlimited, except as to the amount. But the jurisdiction of these courts, though unlimited as to the subject matter of which they have cognizance, by any express declaration of the legislature, is nevertheless limited, in point of locality, as well by the general principles of law, which our courts acknowledge as rules of decision, as by the express provisions of the 11th section of the judiciary law before mentioned. As to the first, it will be acknowledged, that there is no law of congress which limits the jurisdiction of the courts, by the nature of the suits of which they have cognizance. By what law, then, is it, that actions of ejectment, dower, and trespass, in relation to real property, can be brought only in the district where the land lies?

If the defendant be served with process in the district where the suit is brought, neither the 11th section, nor any other provision in

the act of congress, has restrained the jurisdiction of the court in the supposed cases. The only answer to the question is, that the want of jurisdiction is the result of certain general principles of law, acting upon the particular subject. In like manner, the jurisdiction of these courts, when sitting in an admiralty or prize cause, is limited by those general principles which apply to courts of admiralty in England and the United States, as well as in other countries. Though bounded only by the nature of the causes over which they are to decide, and not in any respect by place; it is nevertheless essential to the exercise of this jurisdiction by any particular court, that the person or thing against whom or which the court proceeds, should be within the local jurisdiction of such court. Such was the jurisdiction of the several vice-admiralty courts of Great Britain, in America, and the West Indies, until the statute of the 41st of George III., which, whether sitting as instance or prize courts, were confined to breaches of the revenue laws, committed within their local jurisdictions, and to cases of vessels, &c., brought within their local jurisdiction. The only exception to the general rule above stated, applicable to the court of admiralty, in prize causes, is that of a vessel lying in the port of a neutral country, most unwillingly assented to by Sir W. Scott, under the sanction of precedents, but powerfully opposed by the reasons urged against it by that distinguished judge. But even in that case, it was never pretended that the process of the court, could go into the neutral country, to compel an appearance, or to enforce the execution of the sentence.

But secondly, the jurisdiction of these courts in prize causes, is limited, as to persons, by the express provisions of the 11th section of the judiciary law before referred to. Prize proceeding against an inhabitant of the United States, is unquestionably a civil suit; and if it be against the person, instead of the thing, the jurisdiction is excluded, unless it be instituted in the court of the district whereof he is an inhabitant, or is found at the time of serving the process. The manifest policy of the judicial system of the United States, was, to render the administration of justice as little oppressive to suitors and others as possible; and it corresponds entirely with that construction, which confines the process of the courts within the limits of the district in which the court sits, and from which it issued.

In the exercise of a jurisdiction over persons not inhabitants of, or found within the district where the suit is brought, there are difficulties, which, in the opinion of the court, nothing but an act of congress can remove. In what manner, for instance, is the marshal to dispose of the person? He has no authority to conduct him beyond the limits of his district, nor to deliver him over to the marshal of an adjoining district, for that

purpose. Can he commit him to the gaol of the district where the arrest was made? If he can, the case would present a very extraordinary novelty in jurisprudence—that of a defendant, imprisoned in one district, to answer to a suit depending against him in another, how great soever the distance of the one place might be from the other. In criminal cases, where the offender is arrested in one district, for trial in another, the 33d section of the judicial law has provided, not only for the removal of the offender and witnesses, but also for the transmission of the process and recognizance, taken in the case, to the proper court. In like manner, should it be the will of congress to vest in the courts of the United States an extra-territorial jurisdiction in prize causes, over persons and things found in a district other than that from which the process issued, it would seem to be proper, if not absolutely necessary, at the same time to prescribe the mode of executing the process. Upon the whole, we are of opinion, that the petitioner ought to be discharged.