## BEEKMAN LUMBER COMPANY v. ACME HARVESTER COMPANY, Appellant.

In Banc, December 16, 1908.

1. **APPELLATE JURISDICTION: Authority Exercised Under United States: Proceeding in Bankruptcy.** Section 12 of article 6 of the Constitution, giving the Supreme Court jurisdiction over the appeal "where authority exercised under the United States is drawn in question," refers to the acts of Congress regulating appeals to the Supreme Court of the United States from the Supreme Courts of the several States and the District of Columbia and the territories. Under that section jurisdiction over the appeal is conferred on the Supreme Court in those cases wherein the validity of an authority exercised under the United States is involved within the meaning of those acts of Congress. Where the question involved in the case is whether or not a proceeding in bankruptcy against defendant in the Federal court was a bar to the plaintiff's right to prosecute his suit in attachment in the State court, the appeal is to the Supreme Court.

2. ———: ———: **Federal Question.** The Supreme Court of the United States is the final authority as to what constitutes a Federal question and its decisions are binding on the State courts when a contention is made in one of them that the case in hand involves a Federal question.

3. ————: ————: ————: Injunction: Bankruptcy. Where a petition was filed in a United States District Court of Illinois to have defendant adjudged a bankrupt, and thereafter plaintiff filed a suit in a State court against said defendant, having for its purpose the collection of an indebtedness due from defendant, and thereafter the Federal court ordered that plaintiff be enjoined and restrained from further prosecuting said suit until further order of said court, and defendant pleaded said injunctive order in abatement of plaintiff's suit in the State court, and the State court denied the plea, the appeal from a judgment for plaintiff is to the Supreme Court, whether the Federal court rightfully or wrongfully granted the injunction.

4. BANKRUPTCY: Jurisdiction of State Court: Property in Custodia Legis: Caveat. A filing of a petition in a Federal court praying that defendant be adjudged a bankrupt under the Act of Congress of 1898 is not of itself a *caveat* to all the world and is not alone in effect an attachment of property of defendant within the jurisdiction of the State court, and does not of itself operate as an injunction against all creditors of defendant from prosecuting suits to establish a judgment for debt against defendant. To be that the filing of the petition must be followed by an adjudication adjudging defendant a bankrupt, and if the Federal court, before the filing of a petition in the State court, refuses an adjudication in bankruptcy, and the bankruptcy proceeding is thereafter abandoned before judgment in the State court, defendant's plea in abatement should be denied.

*Held*, by WOODSON, J., in a dissenting opinion, in which LAMM and GRAVES, JJ., concur, that original and exclusive jurisdiction is conferred upon Federal courts to hear and determine all bankruptcy proceedings, and that the filing of a petition in bankruptcy in a Federal court against a defendant gives that court exclusive jurisdiction over all the property and effects of the defendant, and thereafter no other court, Federal or State, has any authority to interfere therewith.

5. ————: ————: Injunction: Property Outside Federal District. By the terms of the Bankrupt Act of 1898 the power conferred upon a United States District Court to grant injunctions to stay suits in other courts, Federal or State, is confined to the territorial limits of the jurisdiction of such district court. It has no power to enjoin such suit where neither the party enjoined nor the property attached by the suit in the State court was in the district court's territorial district. And a United States District Court of Illinois has no jurisdiction to issue, without notice, an injunction against a citizen of Missouri, enjoining him from prosecuting a suit for debt in the proper State court against the Illinois bankrupt and his suit in attachment in connection therewith for property situated

Lumber Co. v. Harvester Co.

within the territorial jurisdiction of the State court, and such injunction order is no obstacle to the further prosecution of the attachment suit.

6. ———: ———: ———: ———: Abandonment.    In October, 1903, a petition for bankruptcy against the defendant was filed in the United States District Court of Illinois, and in December, 1903, this suit for debt and attachment was begun in the circuit court of Jackson county by a citizen of that county against said defendant. When the petition for bankruptcy came up in the Federal court, an adjudication of bankruptcy was at the time denied, and the judge announced that the only way of handling defendant's business and paying its debts was through a creditor's committee composed of a selected body of its largest creditors, and its affairs were carried on in that way and continue to be, so far as appears, to this day. No trustee or receiver or assignee in bankruptcy was appointed, nor was the marshal directed to take charge of defendant's property, and there had been no adjudication of bankruptcy at the trial of this cause in 1905, nor up to the time of the hearing on appeal in 1908. In December, 1904, after the institution of this suit, the Federal District Court, without notice to plaintiff, made an injunctive order restraining plaintiff from prosecuting it, and said order was served on plaintiff, and is pleaded as an obstacle to this suit, which resulted in the attachment of money in the hands of a garnishee, a bank in Jackson county. *Held*, that the proceeding in bankruptcy, even if the Federal court had jurisdiction to issue the injunction, had been abandoned, and was not a bar to the prosecution of this suit in the State court.

*Held*, by **WOODSON, J.**, dissenting, that the issuance of the injunction in 1904 is affirmative proof that the Federal court had not abandoned jurisdiction over the bankruptcy proceeding, that it originally had jurisdiction over the subject-matter and parties in that proceeding, and having taken jurisdiction that fact of necessity excludes the jurisdiction of all other courts over the same cause and all incidents thereto, and the fact that the Federal court was tardy in adjudicating the defendant a bankrupt did not oust it of its jurisdiction, and any misconduct in that regard should be adjudicated in the Federal courts and not in the State courts.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

Affirmed.

*Karnes, New & Krauthoff* and *Newman, North-rup, Levinson & Becker* for appellant.

The court in which the petition was filed had jurisdiction to adjudge the corporation a bankrupt. Sec. 2, subd. 1, National Bankruptcy Law. "The filing of the petition in bankruptcy was a *caveat* to all the world. It was in effect a *caveat* and an injunction. Thereafter all the property rights of the debtors were *ipso facto* in abeyance until the final adjudication. . . . No matter where the property of the bankrupt estate may have its *situs,* if within the United States, it passes to and vests in the trustee. . . . Under the scheme of the bankrupt act, the district court of the domicile of the bankrupt takes exclusive jurisdiction of the bankrupt and his property, wherever situate. . . . There are no such things in bankruptcy proceedings as courts of primary and ancillary jurisdiction." In re Granite City Bank, 137 Fed. 818; Markson v. Heaney, 1 Dillon 497; In re Richardson, 2 Benedict 517; In re Weinger, Bergman & Co., 126 Fed. 875; In re Pack. Co., 138 Fed. 625; Wagner v. U. S., 104 Fed. 133; In re Basch, 97 Fed. 761; In re Kleinhaus, 113 Fed. 107; In re Emslie, 102 Fed. 291; Bear v. Chase, 99 Fed. 920. The general scheme of the Bankruptcy Law is that all creditors of the same class shall share equally in the assets of the estate. This is emphasized by section 29b of the Bankruptcy Law which makes it an offense punishable by imprisonment for a person to receive any material amount of property from a bankrupt after the filing of the petition with intent to defeat the act. By section 2, clause 4, a bankrupt is defined to include a person against whom a petition in involuntary bankruptcy has been filed. By section 2, clause 19, it is provided the word "persons" shall include corporations. In re Brooks, 91 Fed. 508. By sec. 8, art. 1, Constitution of the United States, Congress has power to establish "uniform laws

on the subject of bankruptcies throughout the United States." "The rights and liabilities of parties are controlled by the Bankrupt Act and when the State law comes in conflict with it, it must yield." Rosenfield v. Siegfried, 91 Mo. App. 184; In re Watts, 190 U. S. 1.

*Stewart Taylor* for respondent.

(1) Let us assume that a sufficient number of creditors had signed the petition and that the United States court had assumed jurisdiction in the regular way for the purpose of adjudication in bankruptcy, of the appointment of a trustee or a receiver, and the only question was one of staying the proceedings in the State court until in the usual course the United States court could act and adjudicate the alleged bankrupt or dismiss the proceedings, what then would be the effect of the pendency of the bankruptcy proceedings? This question is answered by a case decided in the District Court of the United States for the Western District of Missouri, in In re Wells, 114 Fed. 222. (2) The Bankruptcy Act of 1898 only contemplates summary proceedings for the determination of the issues. Sec. 18. (3) The language of section 11 of the Bankruptcy Act, providing for a stay of proceedings, by express terms excludes from its operation those suits which may be filed after a petition in bankruptcy has been filed. (4) Again, assuming that the proceedings in the Federal court were regular and the proceedings were being had within the terms of the described act, did the court have a right to issue an injunction against the respondent who was not within the territorial limits of the bankrupt court? It will be remembered that the United States courts are prohibited from issuing injunctions against the State courts in all cases except where specially provided for by the Bankrupt Act. Sec. 2, ch. 2, Bank-

ruptcy Act; Lathrop v. Drake, 91 U. S. 517; Loveland on Bankruptcy (Ed. 1899), pp. 66, 67, 68.

GANTT, C. J.—This cause originated in the circuit court of Jackson county, December 2, 1903, in which the plaintiff, a corporation organized under the laws of the State of Missouri, sought to recover of defendant, a corporation organized under the laws of Illinois, and having its chief office and place of business at Peoria in said State, $1,453.58 for lumber sold and delivered by the plaintiff to the defendant, an itemized account of which was annexed to and filed with the petition. On December 24, 1903, a motion was filed by the defendant to stay the proceedings on the ground that there was pending against the defendant in the district court of Illinois a petition in involuntary bankruptcy. On January 11, 1904, motion to stay the proceedings was sustained. On March 30, 1904, the plaintiff filed its motion to set aside the stay of proceedings, which motion was sustained on May 14, 1904.

On October 12, 1904, defendant filed an answer in the nature of a plea to the jurisdiction and a plea to the merits in the following words: "Now on this day comes the Acme Harvester Company and appearing especially for the purpose of this plea only pleads to the jurisdiction of this court and says this cause should not be prosecuted. Defendant further avers that heretofore in the district court of the United States for the Northern District of Illinois, Southern Division, a court of competent jurisdiction in that behalf, a petition was filed to adjudicate the Acme Harvester Company a bankrupt. Thereafter it was by said court ordered and adjudged that Beekman Lumber Company be enjoined until the further order of that court from maintaining this proceeding or prosecuting this action. The proceedings resulting in such injunction were duly had and the order and judgment

of injunction were rendered. The defendant by way of protestation and for answer to the petition of the plaintiff denies generally each and every allegation therein contained.''

On June 20, 1905, plaintiff filed a reply in words as follows: ''Plaintiff for reply to the answer of the defendant denies each and every allegation of new matter therein made or contained. For further reply plaintiff shows to the court that the matters set forth in defendant's answer were set forth in defendant's motion to stay proceedings herein filed December 24, 1903, which motion was by this court sustained; that afterwards on the — day of ——, 1904, this plaintiff filed its motion to set aside said stay order on the ground named therein that said matters did not entitle defendant to a stay; that said motion was sustained and no appeal was taken therefrom and thereby the matters and things set forth in defendant's answer were adjudged against it and became *res adjudicata* and the defendant cannot now be heard to urge the same, wherefore plaintiff prays judgment as in his petition.''

The case was tried at the April term, 1905, and at the close of the evidence the trial court directed the jury to return a verdict in favor of the plaintiff and thereupon, in accordance with the directions of the court, the jury did return a verdict in favor of the plaintiff and assess the damages at the sum of $1,587.52, and judgment was rendered accordingly in favor of the plaintiff against the defendant and the court further found that the defendant not having denied the grounds of attachment, the same stood confessed as true and plaintiff's attachment was sustained and the garnishee, Union Avenue Bank of Commerce, having admitted in its answer the possession of $1,342.45, the money of the defendant, it was further considered and adjudged by the court that plaintiff have and recover of and from said garnishee the said

sum so confessed and have execution therefor and that the garnishee be allowed $25 as attorney fees and that defendant be given credit on the judgment for whatever sum the plaintiff may collect from the garnishee. In due time the defendant filed its motion for new trial and in arrest of judgment, which was heard and overruled by the court and defendant excepted. Thereupon an appeal was granted to this court in due form on July 15, 1905, and leave was given the defendant to file a bill of exceptions, which was by the court allowed, signed and sealed and made part of the record.

On the trial the plaintiff offered in evidence proof of the delivery of the goods sued for and a letter from the defendant giving a detailed statement of the lumber shipped by plaintiff, and the balance due plaintiff from the defendant, showing the sum to be $1,453.58, and rested.

On the part of the defendant the evidence was as follows: A petition in bankruptcy filed against the defendant in the district court of the United States for the Northern District of Illinois, Southern Division, on the 23d of November, 1903, in behalf of certain creditors in which it was charged that the Acme Harvester Company was insolvent and had committed certain acts of bankruptcy, to-wit, in giving illegal preferences to certain other creditors. Second, a petition for an injunction against the plaintiff Beekman Lumber Company from prosecuting this present action, which said petition for injunction was filed October 3, 1904. Third, an order granting the injunction until the further order of the said district court.

In rebuttal the plaintiff offered and read in evidence a letter from the defendant by its vice-president, H. L. Stone, calling the plaintiff's attention to the fact that it had not yet signed "the creditors' committee" agreement whereby the affairs of the Acme Harvester Company would be placed in the hands of five of the heaviest creditors, for the purpose of work-

ing up its assets and gradually liquidating its indebtedness and calling attention to the fact that Judge Kohlsaat has stopped the bringing of the suits against the company or endeavoring to throw it into bankruptcy, he having decided that it was solvent, and that the only reasonable and fair way to handle the business was through a creditors' committee selected by the heaviest creditors; also a letter from Messrs. Newman, Northrup, Levinson & Becker to the plaintiff calling their attention to this creditors' agreement and the steps to be taken for the liquidation of the Acme indebtedness. Also a letter from the creditors' committee to the plaintiff as follows:

"Gentlemen: In our letter of October 24th, we advised you a certain law firm of this city had caused a petition in bankruptcy to be filed against the Acme Harvester Company and made an application for an immediate appointment of a receiver. We are pleased that the motion for a receiver was heard this morning by the Honorable C. C. Kohlsaat, Federal Judge in Chicago, who refused to appoint a receiver, and said: 'This estate is a very large one and is in the hands of a committee of reliable creditors. It is my judgment that the creditors ought to manage and control the estate, the creditors can produce results much better than any receiver in handling a large manufacturing concern like the Acme Harvester Company.' At the close of the argument the court referred the matter to Judge David McCulloch, referee in bankruptcy at Peoria, to inquire into the truth of the allegations of the petition and to ascertain whether the petitioning creditors have any standing or right to file a petition in bankruptcy. There is really only one creditor left in the bankruptcy proceedings, although persistent efforts have been made by the lawyers to get other creditors to join."

"Signed by D. L. Forgan, and others,
"Creditors' Committee."

Plaintiff also offered in evidence another letter from this creditors' committee calling attention to the proposed reorganization of the company and stating that they had received letters from about two-thirds of the creditors, eighty per cent of whom desired stock and the rest preferred to accept fifty per cent in cash and asking plaintiff to determine whether they would take stock or cash. Plaintiff also offered in evidence a report of the defendant to the United States District Court of the business of the concern, a statement of its assets and liabilities and the conduct of the business since January 1, 1905.

I. The first proposition for consideration is whether this court has jurisdiction of this appeal, as the amount of the judgment appealed from is only $1,597.52. We think it is apparent that if this court has jurisdiction at all of this appeal, it must be found in section 12 of article 6 of the Constitution of this State, which gives this court jurisdiction in cases, "where the validity of a treaty or statute of or authority exercised under the United States is drawn in question." The validity of a treaty or a statute of the United States is nowhere challenged in this record so that the question is narrowed down to the proposition whether "authority exercised under the United States is drawn in question." As to what is drawing in question the validity of the authority exercised under the United States has often been the subject of judicial interpretation. The author of this provision of section 12 of article 6 of our Constitution obviously had in mind the acts regulating appeals to the Supreme Court of the United States from the supreme courts of the several States and the District of Columbia, and the supreme courts of the territories. [Sec. 709, R. S. U. S. 1878; 23 U. S. Statutes at Large, p. 443.] By these acts an appeal or writ of error is allowed from any judgment at law or decree

in equity in the supreme courts of the several States, the supreme court of District of Columbia, or the supreme court of any of the territories, wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty, or a statute of or authority exercised under the United States, when the decision is against such right. The clause of our Constitution just cited is so nearly in the words of the Federal statutes, and being on the kindred subject of appeals, we think it was clearly the object and purpose of the framers of the Constitution to confer jurisdiction on this court by appeal in those cases wherein the validity of an authority exercised under the United States is involved within the meaning of the said acts of Congress. An examination of the various decisions of the Federal Supreme Court will demonstrate that the question is one requiring the nicest discrimination.

In Dupasseur v. Rochereau, 21 Wall. 130, the question for decision was whether a State court had given due effect to the decree of a court of the United States, and it was asserted that the record had presented no Federal question. The Supreme Court of the United States said: "Where a State court refuses to give effect to the judgment of a court of the United States rendered upon the point in dispute, and with jurisdiction of the case and the parties, a question is undoubtedly raised which, under the act of 1867, may be brought to this court for revision. The case would be one in which a title or right is claimed under an authority exercised under the United States, and the decision is against the title or right so set up. It would thus be a case arising under the laws of the United States, establishing the circuit court and vesting it with jurisdiction; and hence it would be within the judicial power of the United States, as defined by the Constitution; and it is clearly within the chart of

appellate power given to this court, over cases arising in and decided by the State courts.''

In Factors' and Traders' Insurance Company v. Murphy, 111 U. S. 738, a court of the United States sitting in bankruptcy ordered a sale of real property of the bankrupt free from incumbrances. The property was purchased at the sale on behalf of lienholders. Subsequently one who possessed a lien on the property at the time the order was entered and sale made, brought suit in a State court of Louisiana to foreclose such lien, claiming that she had not been a party to the bankruptcy proceedings, and that her lien was unaffected by the sale. The State court decreed in favor of plaintiff, and a writ of error was prosecuted to the Supreme Court. In reversing the judgment of the State court, it was said: ''Counsel for defendant in error deny the jurisdiction of this court and move to dismiss the writ. But it is apparent that the only controversy in the case relates to the effect to be given to the sale under the order of the district court of the United States, to sell the mortgaged property free from incumbrances. Both parties assert rights under this order of sale. Plaintiffs in error assert that the sale as made was valid, and, being sold free from incumbrances, extinguished Mrs. Murphy's lien as well as others. Defendant asserts that it had the effect of discharging all other liens but hers, and thus gave her the exclusive, paramount lien on all the property so sold. Both the parties, therefore, rely upon rights under Federal authority, and as the right of plaintiff in error was denied by the [State] court the writ of error lies.''

In Avery v. Pepper, 179 U. S. 305, the two cases last above referred to were approvingly cited, and the rule was declared to be that where a controversy in the State court presented a contention as to the validity or proper construction of an order or decree rendered by the court of the United States, a Federal

question was presented reviewable by the Supreme
Court of the United States.

In Railroad v. Smith, 154 Mo. 300, it was ruled
by this court on an application for a writ of pro-
hibition against the Kansas City Court of Appeals
to prevent that court from further proceeding in the
case of Elliott v. said Railroad Company, which had
been appealed to that court from the Cooper Circuit
Court and to further prohibit said court from carrying
out the judgment entered in said cause, and to trans-
fer the record and proceedings in the said cause to
this court, on the ground that a Federal question was
involved, that a suit in a State court on a bond given
in an injunction suit in a Federal court for attorney's
fees, whether the said fees were paid for having the
injunction dissolved or the injunction was only ancil-
lary to the main object of an action at law, pending
in said Federal court, did not involve a Federal ques-
tion in such a way as to give this court jurisdiction
of the appeal, although attorneys' fees are not con-
sidered by Federal courts elements of damages in
suits on injunction bonds and the State court had
held that attorneys' fees were recoverable in the suit
on said bond. Thereupon a writ of error was sued out
from the Supreme Court of the United States to the
Kansas City Court of Appeals and the Supreme Court
of the United States in 184 U. S. 530 reversed the
judgment of the Kansas City Court of Appeals and
held, upon the authority of Tullock v. Mulvane, 184
U. S. 497, that the claim of immunity from liability
for attorneys' fees as one of the elements of damage
under the injunction bond, presented a Federal ques-
tion, which was incorrectly decided by the Kansas
City Court of Appeals in holding that it was proper
to award the amount of such fees in enforcing the
bond. Tullock v. Mulvane and Railroad v. Elliott,
supra, cannot be reconciled with the decision of this
court in Railroad v. Smith, 154 Mo. 300. While those

cases did not in terms overrule Railroad v. Smith, they did overrule the Kansas City Court of Appeals, and the Supreme Court of the United States took jurisdiction of the appeal on the ground that the validity of an authority exercised under the United States was directly involved, which this court had denied in the case for prohibition.

Those cases sufficiently indicate the course of decision in the Supreme Court of the United States and as that court is the final authority as to what constitutes a Federal question, its decision must control. Now, in the instant case, the question is presented, what is the effect of the proceedings in bankruptcy filed in the district court of the United States as against this action thereafter instituted in a court of Missouri? From the statement of the case, it will be observed that the circuit court held that said proceedings in bankruptcy were no bar to a recovery by the plaintiff of its claims against the defendant, and the main insistence on this appeal is that the filing of the petition in bankruptcy was a *caveat* to all the world and thereafter all the property rights of the defendant passed under the jurisdiction of the bankrupt court and operated as an injunction against all other creditors and persons, to not thereafter interefere with the estate, and that the circuit court erred in not so holding and in giving judgment for the plaintiff.

That the United States District Court had jurisdiction to adjudicate the defendant a bankrupt is not questioned. That a petition to have it adjudged a bankrupt October 22, 1903, was filed, appears from the record. Afterwards this suit was brought in Jackson county against the defendant. On October 3, 1904, the United States District Court for the Northern District of Illinois, Southern Division, ordered that the Beekman Lumber Company of Kansas City, Missouri, be restrained and enjoined until the further order of said court from the further prosecution of

this action in the circuit court of Jackson county. The defendant in the suit pleaded that injunctive order in abatement of this action and the circuit court decided against such plea. Whether rightfully or wrongfully the United States· District Court exercised· the authority of granting the injunction and it did so as a court of the United States, and the State court, it is charged, denied the validity of that injunction. In our opinion, this presents a case for the appellate jurisdiction of this court under section 12 of article 6 of the Constitution of this State.

II. We are thus brought to the important question in this case and that is the effect of the proceedings in bankruptcy filed in the United States District Court for the Northern District of Illinois, as against this action thereafter brought in the circuit court of Jackson county. The question is divisible. First, what was the effect of the filing of the petition? On the part of the defendant it is insisted that the filing of the petition alone was a *caveat* to all the world and in effect an attachment and injunction. "Thereafter all the property rights of the debtor were *ipso facto* in abeyance until the final adjudication."

Loveland in his work on Bankruptcy (3 Ed.), page 15, speaking of the differences between the Bankrupt Acts of 1867 and 1898, says: "Fifth. Another important difference between the two acts is the time when property passes out of the bankrupt. Under the Act of 1867 the title to the bankrupt's property vested upon a deed of conveyance in the assignee as of the date of filing the petition in bankruptcy; but it vests in the trustee by operation of law under the Act of 1898 *as of the date of the adjudication in bankruptcy.*" In Mueller v. Nugent, 184 U. S. 1-14, C. J. FULLER said: "It is as true of the present law as it was of that of 1867, that the filing of the petition is a *caveat* to all the world, and in effect an attach-

ment and injunction; . . . and on adjudication, title to the bankrupt's property became vested in the trustee (Act of July 1, 1898, secs. 21e and 70, ch. 541, 30 U. S. Stats. at Large, pp. 552, 565, U. S. Comp. St. 1901, pp. 3451, 3430) with actual or constructive possession, and placed in the custody of the bankruptcy court." "The adjudication operates as a seizure of the property of the bankrupt, by which it is taken *in custodia legis.*" [In re Granite City Bank, 137 Fed. 821.] One fact stands out prominently in this record and that is that this plea of want of jurisdiction on the part of the circuit court of Jackson county to render judgment against the Acme Harvester Company is not made by a trustee in bankruptcy of said Harvester Company appointed by the United States District Court or by a receiver appointed by said court to take charge of the property of the said Harvester Company, but is made by the defendant, the Acme Harvester Company, itself. It is significant that this action was begun on December 7, 1903, and the petition for bankruptcy was filed October 23, 1903, and the trial of this cause was had on the 20th of June, 1905, and yet no adjudication had ever been made up to the rendition of the judgment in this case that the said Harvester Company was a bankrupt, and learned counsel for defendant in this court solemnly admits in open court that even up to the time of the argument of this cause on appeal in this court, *no adjudication* of bankruptcy had been made by the United States District Court for the Southern Division of the Northern District of Illinois. Thus it appears that while a petition in bankruptcy was filed in the bankrupt court on November 23, 1903, against defendant, no adjudication had taken place up to October, 1908. Plaintiff asserts and the record sustains its contention that on October 26, 1903, an adjudication of bankruptcy was denied. The only answer of defendant to this is that there was no *formal*

*refusal of adjudication.* It must, however, be borne in mind that the circuit court of Jackson county is a court of general jurisdiction and has jurisdiction in attachment cases of this kind and amount and the *res* was within its territorial jurisdiction and had been seized by its sheriff and it devolved upon defendant to show that said court had no jurisdiction because another court of exclusive jurisdiction had first obtained jurisdiction over the moneys held by the garnishee on deposit for defendant. That property in the legal custody of a court of competent jurisdiction is not subject to seizure by judicial process from another court, is the settled law of this court, and the court in which jurisdiction first attaches must prevail. [Bates Co. Natl. Bank v. Owen, 79 Mo. l. c. 431; Metzner v. Graham, 57 Mo. 404; Freeman v. Howe, 24 How. (U. S.) 450; Buck v. Colbath, 3 Wall. (U. S.) 334.] Conceding, then, that had an adjudication in bankruptcy followed the filing of the petition for bankruptcy on October 23, 1903, *such adjudication,* in the language of the Supreme Court of the United States, would have "operated as a seizure of the property of the bankrupt, by which it was taken *in custodia legis,*" and the district court of the United States in Illinois would have had exclusive jurisdiction over the estate of the defendant wherever found, yet when the record discloses that Judge Kohlsaat, the Judge of the United States Court, refused to appoint a receiver and that two years had elapsed before the trial of this cause in the circuit court of Jackson county and no adjudication had yet taken place, we think but one rational conclusion can be drawn and that is that the United States District Court *did refuse an adjudication* in bankruptcy and that the steps taken to obtain an adjudication in bankruptcy were *abandoned,* and this is buttressed by the testimony showing that with the knowledge and approval of that court a creditors' committee took charge of the affairs of defendant and

were administering them, collecting debts due and paying debts owing by defendant. This condition of affairs is utterly irreconcilable with any claim that said district court has asserted and is asserting jurisdiction as a bankrupt court over the estate of defendant and has such a custody of said estate as would preclude a creditor from asserting his or its claim against defendant in another court of competent jurisdiction. Certainly an *adjudication* now could not restore that equality which the Bankrupt Act contemplates. The statement of this creditors' committee discloses sales of real estate of defendant, the purchase of new raw material with the moneys of defendant; the payment of wages of employees for the year 1904, to the amount of $197,000; the disbursement of funds of defendant to the amount of $927,217.84, and provision made for the sale of the output for 1905. In a word, the business of defendant is being conducted by a committee of creditors by and with defendant's consent and the knowledge and acquiescence of the district court and the disposition and dissipation of the funds and property of defendant owned by it when the attempt to have it adjudicated a bankrupt was commenced. Upon what principle of law and regard for the Bankrupt Act of 1898, can the said district court now adjudicate bankruptcy and oust all other courts of their rightful jurisdiction against defendant? In our opinion all these considerations are wholly inconsistent with such a claim and show, we think, that all idea of such an adjudication has been abandoned and therefore that the insistence that the mere filing of the petition in bankruptcy without any subsequent adjudication of bankruptcy did *ipso facto* place defendant's property *in custodia legis* of the district court is not tenable, and the subsequent action of that court convinces us that it in fact refused an adjudication and that the circuit court of Jackson county was not deprived of its juris-

diction by attachment on that ground, and it properly so held.

III.  But notwithstanding the mere filing of a petition which is not followed by an adjudication, cannot have the effect of placing the debtor's property *in custodia legis,* there remains the still further contention of defendant that the circuit court of Jackson county was bound to suspend and stay the proceedings in this case because the United States District Court granted an injunction against the plaintiff herein, specifically, by name, enjoining it from further prosecuting this suit, which resulted in the judgment from which this appeal was taken.  Said injunction was granted October 2nd, 1904, on the petition of the *defendant herein,* without notice, or the service of a subpoena on plaintiff from the United States District Court.  It was ruled in several cases under the Act of 1867 that injunctions in bankruptcy, at least when issued in the primary stage of the proceedings, under section 40 of the act, may be allowed and issued without notice; that the provision in the Judiciary Act of 1793 (1 U. S. Stat. at Large, 334) forbidding the writ to be granted in a suit in equity, without notice to the adverse party, does not apply to proceedings in the district court under the Bankrupt Act.  [In re Smith, Fed. Cases No. 12994; Ex parte Carlton, Fed. Cases No. 2415; In re Wallace, Fed. Cases No. 17094; In re Muller, Fed. Cases No. 9912.]  An examination of these cases, however, will show that the injunctions issued against parties within the territorial jurisdiction of the district court of bankruptcy, whereas in this case neither the party enjoined nor the attached property was in the Southern District of Illinois.  Section 2 of the Bankrupt Act of 1898, like its predecessor in the Bankrupt Act of 1867, provides that "the district courts of the United States in the several States . . . . are hereby made courts of bankruptcy, and

are hereby invested, *within their respective territorial limits* as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms." By section 11 of the Act of 1898 it is further provided that: "A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition against him, shall be stayed until after an adjudication or the dismissal of the petition," and sub-section 15 of section 2 of the act provides that the district court may "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

It will be observed that the ground upon which defendant seeks to have the judgment of the circuit court of Jackson county reversed is that the United States District Court of the Northern District of Illinois had issued an injunction enjoining and restraining the plaintiff from the further prosecution of its suit in the State court, under and by virtue of its equity jurisdiction to stay proceedings in other courts. All courts of the United States are forbidden to stay proceedings in any court of a State, except in cases where such injunctions may be authorized by any law relating to proceedings in bankruptcy. [R. S. U. S. 1878, sec. 720; Haines v. Carpenter, 91 U. S. 254.]

Broad and sweeping as the provisions of the Bankrupt Act are in conferring jurisdiction to grant injunctions to stay suits in other courts, both State and Federal, in order to preserve the estate of the bankrupt and distribute it *pari passu,* between and among his creditors, it is confined by the terms of the act itself to the territorial limits of the jurisdiction of the district court.

The effect of this limiting the jurisdiction of the bankrupt courts to their territorial limits has received much consideration by the Federal courts. In re Waukesha Water Company, 8 Am. Bankruptcy Rep. 715, was a proceeding in the United States District Court for the Eastern District of Wisconsin for a rule upon the Waukesha Hygeia Ice Company and Palmer to show cause why certain instruments in the possession of the latter, including one purporting to convey to the Ice Company certain property of the bankrupt, held by the trustee in bankruptcy, should not be surrendered for cancellation. Both parties named as respondents were residents of Illinois, without the territorial limits of this district court, and were there served with an order to show cause, and both entered a special appearance, with a plea to the jurisdiction over the subject-matter and *in personam*. Jurisdiction of the subject-matter was sustained upon the authority of Mueller v. Nugent, 184 U. S. 1, but said the court: "The questions raised, however, of jurisdiction to act *in personam* upon these respondents, who reside in another State and district, and are there served with the order to show cause in this matter, is not met by that decision, nor is such service authorized by any express provision of the Bankruptcy Act or ruling thereunder called to my attention. In the absence of statutory authority for the process of the court to run beyond the territorial limits of the district, the doctrine is well settled that no jurisdiction exists to that end. As stated in the early and leading case of Toland v. Sprague, 12 Peters 300, 328: 'Whatever may be the extent of the jurisdiction over the subject-matter of the suit, in respect to persons and property, it can only be exercised within the limits of the district. Congress might have authorized civil process from any circuit court to have run into any State in the Union. It has not done so,' except in the case of

subpoena for witnesses. It was thereupon held that service of its process cannot be made without the district. [See, also, Ex parte Graham, 3 Wash. C. C. 456, Fed. Cas. No. 5657, and cases noted; Picquet v. Swan, 5 Mason C. C. 35, Fed. Cas. No. 11134; 1 Foster's Fed. Prac. (3 Ed.), sec. 96; 1 Desty, Fed. Proc. (9 Ed.), p. 412.] An important exception to this rule was upheld by Mr. Justice STORY in Dunlap v. Stetson, 4 Mason C. C. 349, Fed. Cas. No. 4164, in the case of a bill filed to enjoin the enforcement of a judgment at law in favor of a non-resident plaintiff, *entered in the same court*, and jurisdiction was sustained under a service without the district upon the ground that the suit was 'auxiliary and dependent,' not original, and of necessity must be so cognizable by the court which rendered the judgment. In Jones v. Andrews, 10 Wall. 327, and Webb v. Barnwall, 116 U. S. 193, the general doctrine of Dunlap v. Stetson was approved, but the question of service beyond the limits of the district was not so raised in either of the last-mentioned cases as to call for decision. By subsequent statute, however, such service is authorized in certain equitable actions in the circuit court, relating to property within the district, including one to remove a cloud upon the title (1 Supp. R. S. (2 Ed.), ch. 137, sec. 8; 1 Desty, Fed. Proc. (9 Ed.), sec. 25); but its provisions are applied in terms to such suits only 'commenced in any *circuit court* of the United States,' and are not applicable to this proceeding in the district court, unless adopted by some provision of the Bankrupt Act. The further provision requiring actions to be brought in the district where the defendant resides (1 Supp. R. S. (2 Ed.), ch. 866, sec. 1), is applicable only to original suits, and not to the present proceeding, within the distinction approved by the authorities cited. Is authority conferred by implication in the terms of the Bankrupt Act to thus summon parties who are without the limits of the district?'' The con-

clusion was that there was no authority for the order
and service in question and that the objection for want
of jurisdiction over respondents was sustained.

In Paine v. Caldwell, 1 Haskell 452, the assignee
of a bankrupt brought a bill in the United States District Court for the State of Maine to recover from a
citizen of Massachusetts the amount of a judgment
recovered by him in the courts of Maine against his
debtor, the bankrupt, and collected in fraud of the
Bankrupt Act through an attorney in Maine upon
whom process was served. The respondent appeared
and pleaded that the district court had no jurisdiction over him, inasmuch as he was a citizen of Massachusetts and had no property within the jurisdiction
of the district court. After a most exhaustive review
of the Federal statutes and the opinions of the Supreme Court of the United States and circuit courts
thereof, the conclusion was reached that the district
court had no jurisdiction to send its process into another district and bring a citizen of Massachusetts
before it, but was limited to its territorial limits.

In Jobbins, Assignee v. Montague, 5 Benedict 422,
it was ruled that a subpoena to appear and answer in
a suit in equity brought by an assignee in bankruptcy
to restrain the foreclosure of a mortgage is original
process in a civil suit within the 11th section of the
Judiciary Act of 1789, and no authority is to be found
in the Bankruptcy Act for the service of such a subpoena on a defendant in the cause, outside of the limits
of the district within which such suit is brought. Judge,
afterwards Mr. Justice BLATCHFORD of the Supreme
Court of the United States, delivered the opinion.
Jurisdiction of the subject-matter of the bankrupt's
estate and of all suits in equity brought by the assignee was conceded, but the question was whether the
District Court of the Southern District of New York
could and did obtain jurisdiction over Montague, the
mortgagee, by the service of a subpoena issued out of

chancery, from the said district court. In principle that case was on all-fours with the one at bar save and except that the injunction granted in this case was wholly without process of any kind or attempt thereat. That was the foreclosure of a mortgage on New Jersey lands; this is an attachment against Missouri personalty. In each case the court in which the injunction was sought was the United States District Court of another State and district, and in neither case did the respondent enter a voluntary appearance. In the Jobbins case, a subpoena out of chancery was issued and served in New Jersey and, as already said, the question of jurisdiction over the person of the plaintiff mortgagee in the New Jersey State court, by virtue of the service of the subpoena, was the matter for decision. Judge BLATCHFORD said: "So far as Montague [the mortgagee] is concerned, the bill prays for an account of the amount due on the bond and mortgage to him, and for a decree that the plaintiff is entitled to redeem the mortgaged premises on paying to Montague the amount so to be found due, and that Montague shall then deliver up the mortgage to be cancelled, and *that all suits* and proceedings by Montague, now or hereafter, *to foreclose the mortgage,* or to sell or obtain possession of the mortgaged property, *may be enjoined.* This is not a cross-bill, in any sense. Montague has no suit pending in this court. It is an original bill, praying for original relief, and the subpoena issued on it is original process. That this court [the United States District Court for New York], independently of any provision in the Bankruptcy Act, could not acquire jurisdiction of the person of Montague in this suit, by such service of the subpoena as has been made in this case, is not doubtful. Independently of that act, *this court could make effective no service beyond the limits of this district,* of process of subpoena, in equity, to appear and answer, issued by it. [Toland v. Sprague, 12 Peters 300, 330; Hern-

don v. Ridgway, 17 How. (U..S.) 424, 425; Atkins v. The Fibre Disintegrating. Company, 7 Blatch. C. C. 566.] Does, then, the Bankruptcy Act make lawful such service of the subpoena to appear and answer as was made in this case?'' The learned judge then quotes from Toland v. Sprague, 12 Peters 330, wherein the Supreme Court says: ''Whatever may be the extent of their jurisdiction over the subject-matter of suits, in respect to persons and property, it can only be exercised within the limits of the district.'' And adds: ''These views being founded on the language of the 11th section of the Act of 1789, are equally applicable to the service of original process issued by a district court. . . . There is nothing in the second section of the Bankruptcy Act dispensing with or repealing the provisions of the said 11th section, and nothing repugnant to or inconsistent with them.'' It was held that the service of the subpoena must be set aside and also the injunction.

That the distinction has been maintained between the power of the district court in bankruptcy in issuing injunctions to restrain proceedings in State courts within the territorial limits of its own district and its power to enjoin such proceedings outside of its territorial jurisdiction, is clear, we think, from an examination of the Federal authorities. In In re Litchfield, 13 Fed. 863, Judge Brown, afterwards Mr. Justice BROWN of the Supreme Court of the United States, had before him, in the Eastern District of Michigan, a petition for an injunction and for an attachment for contempt against one Nestor for unlawfully interfering with the property of one Litchfield, a bankrupt, in the State of Michigan. Litchfield had been adjudged a bankrupt by the District Court of the Southern District of New York, and the petitioner, a resident of New York, had been appointed his assignee in bankruptcy. Among the assets were about 4,600 acres of pine land in Michigan. In 1881, these

lands were damaged to such an extent by. fire that it was deemed necessary by the assignee that the timber should at once be cut and lumbered and thereupon the District Court of New York made an order to lumber the same, and contracts were made with Brown and Davidson for cutting and manufacturing the same into lumber.    In 1882, the heirs of one Stewart, with one exception, conveyed their interest in these lands to Nestor, who thereafter claimed to be the owner of two-thirds of the title to said lands. Nestor replevied a portion of the lumber from one Fisher, who had bought the same from the assignee; and also brought ejectments in the State courts against Brown and Davidson and had notified the boom company, which was in possession of some of the logs cut from said lands, to deliver them to him, the said Nestor.    Nestor claimed that a deed from one Knight as receiver to the bankrupt was void for several reasons and denied the authority of the District Court of the United States for the Southern District of New York to authorize the assignee to lumber said timber or continue the business of the said bankrupt beyond nine months after he was adjudged bankrupt or to enter upon or do any acts upon the lands in Michigan.    As to these last two propositions the court found it unnecessary to express an opinion, but said that an assignee in bankruptcy after giving bond and qualifying might take immediate possession of the property of the bankrupt in his district and might take peaceable possession of the bankrupt's property in whatever State or district he might find it, without application to the bankruptcy court of such other district as might enjoin proceedings in the State courts, as held in Ex parte Schwab, 98 U. S. 240.    Said Judge Brown:    "Thus far we have discussed the powers and immunities of an assignee within his own district. Other considerations present themselves when the authority of the assignee is sought to be enforced in

other districts. I see no reason to question his authority to take peaceable possession of the property of the bankrupt, in whatever State or district he may find it, without application to the bankruptcy court of that district. But third persons, whose rights he may chance to assail, are entitled to protection. The power to punish those interfering with property in the possession of an assignee, or to enjoin the prosecution of suits in the State courts, presupposes that the adverse claimant may go into the bankruptcy court and have his right adjusted. But suppose the assignee, as in this case, sends his agent into another State to take possession of lands and lumber them, the adverse claimant cannot resort to the district court of this district for the assertion of his rights, since there is no case pending here, and no assignee within the district upon whom process can be served. Must he go to the southern district of New York, or, possibly, to the district of Oregon, to substantiate his claim? Clearly not. A requirement of this kind would be an intolerable hardship. As the process of a bankruptcy court cannot reach into other districts (Jobbins v. Montague, 6 Nat. Bankruptcy Reg. Rep. 117), neither can inhabitants of other districts be compelled to resort to courts outside of their own jurisdiction. Their only recourse, then, is to the State courts, in which suit may be begun against the persons in actual possession of the property, whether they be agents of the assignee or not. I am, therefore, clearly of the opinion that Nestor was not guilty of contempt in bringing the actions of ejectment, nor in giving notice to the boom company, although such notice would undoubtedly have been a contempt if the transaction had occurred *within* the district where the bankruptcy proceedings were launched.''

Now, bearing in mind that the contention of the defendant here is that the circuit court of Jackson county had no right or jurisdiction to take further

cognizance of plaintiff's action of attachment for that it had been enjoined by the United States District Court for the Southern Division of the Northern District of Illinois, in bankruptcy, from the further prosecution of its said action in attachment and that said injunction was granted without notice and that no subpoena had issued to plaintiff, and under the authorities already cited could not have issued to plaintiff or if issued would have been without authority of law, what effect had said injunction on the plaintiff or the circuit court of Jackson county? The use of injunctions to stay actions at law was almost coeval with the establishment of the chancery jurisdiction. This jurisdiction was not accomplished, however, without a long and severe opposition from the common law judges which continued until the reign of James the First.    [1 Lord Campbell's Lives of the Chancellors, 235; 1 Spence's Eq. Jur., 675; 4 Pomeroy's Eq. Jur. (3 Ed.), sec. 1360.]    In the last-cited treatise it is said:    "The injunction is not addressed to, nor does it operate upon, the courts of law; instead of denying or interfering with, it virtually admits and assumes their jurisdiction.    It is addressed to the litigant parties, and prohibits them from resorting to the legal jurisdiction, because their controversies, depending upon equitable principles, or involving equitable features, can only be fully and finally determined by a tribunal having the equitable jurisdiction.    Injunction is the remedy which, above all others, necessarily operates *in personam.*"    This is the recognized doctrine of all courts.

If, then, as we have seen, the Bankrupt Court of the Northern District of Illinois was confined by the Act of Congress to the territorial limits of said district, in issuing process, as has been repeatedly held by the Federal courts, and could not reach plaintiff, a citizen of Missouri and a resident of the Western District of this State, and said court had and has no

power to punish plaintiff for a contempt of said injunction, it seems obvious that said bankrupt court acquired no jurisdiction over the person of the plaintiff herein, and as to it was of no binding or controlling effect and presented no obstacle to the further prosecution of its attachment suit. Moreover, all the authorities cited which deny the power of the district courts in bankruptcy to reach parties outside of their respective districts, were causes wherein there had been an adjudication in bankruptcy and an assignee had been appointed and qualified and if such was the ruling in these cases, how much stronger is the case of plaintiff in this case, wherein no adjudication of bankruptcy of the defendant herein has taken place five years after the initial steps were taken to have it adjudged a bankrupt and wherein no trustee, receiver or marshal of the district court has been ordered to take charge of defendant's property, and wherein it appears that, by and with the consent of said District Court, the affairs and property of defendant continue to be carried on for its benefit by a selected body of its creditors. Under these circumstances how can it be said that the circuit court of Jackson county was transcending the proper limits of jurisdiction in rendering judgment for plaintiff and refusing to accord to the Federal Court proper respect?

The contention, however, is that although the District Court of Illinois did not and has not after five years adjudicated defendant a bankrupt and has not appointed an assignee, receiver or trustee to take charge of its property nor directed its marshal to do so, but has with its consent permitted a committee of defendant's creditors to proceed to collect its debts, employ operatives and disburse its funds, yet the application to have defendant adjudged a bankrupt is still pending in that court and therefore no other court can interfere with its power over the attached indebtedness in this case. We have already said that in our

opinion the facts disclosed in this record indicate to us that said application for an adjudication in bankruptcy has been abandoned and for that reason there is no conflict of jurisdiction. But more than that it is not true, in our opinion, that the District Court in Bankruptcy can summarily affect the rights of parties outside of said district, where its process cannot run and deprive them of their rights to go into the State courts to assert their rights and when they have done so, by *ex parte* injunctions, restrain them from proceeding with their actions in other districts. The conditions are anomalous. This court fully recognizes the exclusive power of Congress to enact bankrupt laws and enforce them, but we find nothing in the Bankrupt Act of Congress of 1898, or the amendment of 1903, which gives countenance to the contention of defendant in this case, which seems to us more than a cloak to shield it from the rightful actions of its creditors by permitting the conducting of its business, not by an assignee in bankruptcy, nor by a receiver, marshal or trustee of the bankrupt, but by certain of its creditors according to their notions. Surely it was not the purpose of Congress to permit a petition for involuntary bankruptcy to lie dormant in the district court of the domicile of the debtor for five years, and in the meantime permit the alleged bankrupt or certain of his creditors to go ahead, collecting and disbursing his assets and liquidating certain of his debts, and then months afterwards, when another creditor brings his action in another district in a court of competent jurisdiction, on the application of the alleged insolvent allow such creditor to be enjoined by the district court in bankruptcy, without notice and without service of a subpoena, from pursuing his action in the State court. In our opinion, the injunction granted by the District Court of the Northern District of Illinois, after its refusal and failure to adjudge defendant a bankrupt and against the plaintiff, who was and is a

resident of the Western District of Missouri, without notice or the service of a subpoena, was without authority of law and void for want of jurisdiction over the plaintiff and that the circuit court of Jackson county was not interfering with the jurisdiction of the United States District Court in Bankruptcy, but simply asserting its own rightful jurisdiction, and the said injunction constituted no lawful obstacle to the judgment of the circuit court of Jackson county.

IV. It is urged, however, that error was committed because the circuit court directed the jury to return a verdict for the amount of said account and interest thereon at the rate of six per cent per annum from the date of the commencement of this action. Inasmuch as the action was based upon the defendant's own written statement of the items of the account sued on and the balance therein admitted to be due and there was no testimony on the part of the defendant tending in any manner whatever to impeach the items of said account or the amount due thereon, there would seem to have been nothing to submit to the jury unless the contention of defendant, that the court should have left it to the jury to calculate the interest and should not have computed the interest itself, due plaintiff, from the date of the commencement of this action to the day of the trial, at six per cent per annum, is sound. By section 3705, Revised Statutes 1899, "Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." It has often been ruled that the commencement of an action for money is sufficient demand. While interest is not given as a matter of course in actions for torts, surely it would not have been erroneous for the court to have directed the jury that plaintiff was entitled to interest on its account at the

rate of six per cent from the date of the commencement of the suit and there is no claim that the interest actually allowed by the jury in obedience to the instruction of the court was not correctly calculated. We are forbidden by the statutes to reverse judgments for errors or irregularities unless they materially affect the merits of the action. [Sec. 865, R. S. 1899.] To reverse and remand this judgment for another trial simply to have a jury calculate the interest again on the amount acknowledged by the defendant in writing to be due plaintiff would be a clear violation of the statute.

The judgment is affirmed. *Burgess, Valliant* and *Fox, JJ.*, concur. Judge *Woodson* dissents in separate opinion in which Judges *Lamm* and *Graves* concur.

## DISSENTING OPINION.

WOODSON, J.—While I concur in many things stated in the majority opinion written herein, yet I dissent from the conclusions reached by the majority of my brethren.

The Constitution of the United States and the statutes enacted in pursuance thereof confer original and exclusive jurisdiction upon the United States district courts to hear and determine all bankruptcy proceedings. The filing of the petition in bankruptcy in the district court of the United States for the Northern District of Illinois against the Acme Harvester Co. gave that court exclusive jurisdiction over all the property and effects of the company, and no other court, State or Federal, has any authority to interfere therewith. The filing of the petition was a *caveat* to all the world and constructively, at least, placed all of the company's assets *in custodia legis* wherever located in the United States; and it was not necessary, as the majority opinion seems to hold, for the district court

to have first adjudged the company a bankrupt before its jurisdiction could become complete and exclusive. The adjudication in bankruptcy fixes the status of the property and vests the title thereof in the trustee in bankruptcy for the use and benefit of the creditors, and is not one of the necessary steps to be taken in order to confer jurisdiction. The court must first acquire jurisdiction before it can adjudge one a bankrupt, otherwise it would be taking his property without due process of law.

All the authorities hold that whenever a court of competent authority takes jurisdiction of a cause, that fact must of necessity exclude the jurisdiction of all other courts over the same cause, as well as all of the incidents thereto, excepting only such courts as are given appellate and supervising control over them. The reason for this rule seems to be that when such a court takes jurisdiction of a particular case with all the incidents thereto, there remains nothing of it to which the jurisdiction of another court could attach—no case, no parties, no subject-matter is left exposed to the authority of another court. [State ex rel. v. Reynolds, 209 Mo. 1. c. 182.]

## II.

Concede for the sake of the argument only that the District Court of the United States for the Northern District of Illinois has been tardy and negligent in adjudicating the Acme Harvester Company a bankrupt, yet that fact would not oust it of jurisdiction over the case. That misconduct, if misconduct it is, should be corrected in the Federal and not in the State courts. The former have ample competency to do whatever in that respect may be necessary. "This principle is essential to the proper and orderly administration of the laws; and while its observation might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations

exclusively, but is enforced to prevent unseemly, expensive and dangerous conflicts of jurisdiction and of processes. If interference may come from one side, it may be from the other also, and what is begun may be reciprocated indefinitely." [Maclean v. Wayne Circuit Judge, 52 Mich. l. c. 258-9; State ex rel. v. Reynolds, supra, l. c. 184.]

## III.

Nor am I able to concur in the conclusion reached in the majority. opinion to the effect that the United States District Court of Illinois has abandoned its jurisdiction over the bankruptcy proceedings instituted against the Acme Harvester Company.

Clearly, there is nothing contained in this record which would warrant this court in so holding. The letter written by D. L. Forgan to plaintiff is no evidence of an abandonment. It does not purport to have been written by authority of that court nor does it have any binding authority upon that court; and it would be a novel proceeding indeed for us to hold on the strength of that letter that the court had renounced jurisdiction over the case. By so holding we might invite the writing of many such letters, and thereby jeopardize the jurisdiction of this and other courts over many cases which have been pending and undisposed of for much longer periods than the one during which that case has been pending in that court.

Nor am I of the opinion that a lawyer of this bar possesses the authority, either by written or oral statements, to oust this or any other court of its jurisdiction over a cause pending therein.

The jurisdiction of courts does not rest upon such a precarious foundation but is bottomed upon the laws of the country, and they cannot be deprived of their jurisdiction except by their own orders or by the orders and judgments of those courts which have appellate or supervising control over them.

But upon the other hand, this record affirmatively shows that the district court has not abandoned its jurisdiction over the proceedings, because it shows that on October 3rd, 1904, that court issued an injunction against respondent restraining and enjoining it from the further prosecution of this case until further ordered by that court. The issuance of that injunction is wholly at variance with the idea of abandonment of jurisdiction; and if it be conceded, as contended by counsel for respondent (which I do not believe) that said district court possessed no authority to issue an injunction against a non-resident of Illinois, still that fact would not alter the other fact that it still retained jurisdiction and was making orders therein, which is inconsistent with the contention that said court had abandoned its jurisdiction over the cause.

In my judgment the District Court of the United States for the Northern District of Illinois still possesses jurisdiction over the bankruptcy proceedings mentioned, and that the circuit court of Jackson county was without jurisdiction and authority to try this cause.

I am, therefore, of the opinion that the judgment of the circuit court should be reversed and the cause dismissed.

*Lamm* and *Graves, JJ.,* concur.