## JAMES B. JOHNSON, Appellant, v. LUCY H. GRAYSON.

### Division Two, August 1, 1910.

1. **NEW TRIAL: No Ground Assigned: Appeal.** In a law case, in which, under a peremptory instruction, a verdict has been returned for plaintiff, and the trial court has granted defendant a new trial, without assigning any ground therefor, the ruling of the court will be sustained on appeal if any one of the grounds set out in the motion for a new trial was sufficient.

2. **PEREMPTORY INSTRUCTION: Law Case: Oral Evidence.** Where allegations in the petition are denied by the answer in a law case, and oral evidence is introduced by the plaintiff to sustain the issues on his part, the defendant is entitled to have the jury pass upon the evidence, though he offers no evidence at all.

3. ————: **Evidence to Establish any Defense.** Where there is in a law case evidence, which, if true, would establish any one of the good defenses pleaded in the answer, the court should not give a peremptory instruction to find for plaintiff, but should submit the issues to the jury.

4. **USURY: Available to Third Party.** Under the statute (Sec. 3710, R. S. 1899), usury in the note executed to a pledgee by the payee of the collateral note will defeat a recovery in a suit brought by said pledgee against the maker of said collateral note executed to said payee and by him pledged before maturity as collateral security for his own note. So that where Mrs. Grayson executed her note for $4900 to Warner as payee, and Warner executed his own note to Johnson for $2300 and pledged the $4900 note as collateral security before its maturity, if the $2300 note, or the transaction out of which it grew, was tainted with usury, the defense of usury is available to Mrs. Grayson when sued by Johnson on the $4900 note.

5. ————: **Commissions.** Commissions charged by the lender of his own money is to be considered interest in determining whether or not usury was charged. Where plaintiff gave a check for $1900 to the maker of a $2000 note, due thirty days after date, with interest from maturity, and testified he charged the maker $100 commissions for making the loan, the money being his own, the $100 is to be reckoned as interest.

6. ————: **Test.** The test of usury in a contract is whether it would, if performed, result in securing a greater rate of profit on the subject-matter than is allowed by law. Where plaintiff made his check for $1900 to the maker of a $2000 note, due in thirty days, with 8 per cent interest from maturity, the $100 interest charged for the thirty days was at the rate of about 63 per cent per annum, and the contract was usurious.

7. ————: **Renewal Note: Purging Usury.** The giving of a renewal note in which is included usurious interest charged as a part of the principal, does not purge the transaction of usury. If usury was exacted and received at the inception of the transaction, it could not be purged by any number of renewals, so long as the original usury charge was carried forward into the renewals as a part of the principal thereof.

8. **PEREMPTORY INSTRUCTION: Note Without Consideration: Knowledge of Indorsee: New Trial.** Where the note sued on was without consideration, and was indorsed by the payee to plaintiff, before maturity, for value, the burden is on the maker, when sued thereon, to show that the plaintiff indorsee had actual knowledge, when he acquired it, that the note was without consideration. But the indorsee's actual knowledge may be shown by his knowledge of the circumstances under which it was made and his relations and intimate associations with the payee; and though he testifies he had no actual knowledge, yet the court is not bound to accept his testimony as true, and having given a peremptory instruction to find for him, does not abuse its discretion in granting a new trial, if it is of the opinion that, on such new trial, the defendant might be able to show that plaintiff, the said indorsee, did have actual knowledge.

9. **PLEDGE: To Secure Note Given for Pre-existing Debt: Notice of Infirmities: Renewal Notice.** Where a negotiable note is transferred or pledged as collateral security for a pre-existing debt, and no new consideration is given for it, the assignee takes it subject to all equities existing between the original parties to it. So that where the payee of a $4900 note transferred it before maturity to plaintiff indorsee to secure a note for $2300 given by said payee to such indorsee as payee, and said $2300 note was itself given for a pre-existing debt due from the maker of said $2300 note to the payee therein, and no new consideration was given to the said maker by said payee at the time it was given, the said last payee, when he took the $4900 note as collateral security for the payment of said $2300 note, took it subject to all defenses which the maker of said $4900 note could set up if sued by the payee therein, and hence if said $4900 note was without consideration, the maker

thereof, when sued·thereon by the payee in the $2300 note, could defeat a recovery. But the giving of one note in renewal of another is a continuation of the original indebtedness, and the extension of time for the payment of the debt by the giving of a renewal note is à valuable consideration; and if the $2300 note was given in renewal of a prior valid note, it was not given for a pre-existing debt.

10. ———: **Amount Pledgee May Recover.** Where the pledgee sues the maker on a note pledged and indorsed to him as collateral security for the payment of a debt owing him by the pledgor, and the note is, as between the maker and payee, without consideration, the pledgee can recover no more than the debt (principal and interest) due him from the payee or pledgor. If the note is for a valuable consideration, and otherwise valid as between the maker and payee, and the pledge is free from legal infirmities, the pledgee can recover the entire amount of the note, retain enough to pay the debt due him from the pledgor, and the balance is to be turned over to the pledgor or legal holder.

11. ———: ———: **Matter for Jury: Calculating Interest: New Trial.** And where the pledged note is without consideration, even if a peremptory instruction to find for the plaintiff pledgee is permissible, it should direct the jury to find only the amount of the pledgor's debt to the payee with interest; and if the instruction erroneously tells the jury to find the amount of the pledged note, the error is not such as the court itself can correct in the judgment, but the court should grant a new trial, since it is the province of the jury, and not of the court, to calculate interest. .

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

A̠FFIRMED.

*Chester H. Krum* and *Geo. B. Webster* for appellant.

(1) The peremptory instruction for the plaintiff was properly given. (a) Excluding the testimony of Johnson, he was still entitled to recover upon the defendant's own evidence. Delivery is presumed from possession of a note. Pitts v. Sheriff, 108 Mo. 110; Tapley v. Hermann, 95 Mo. App. 537. The law pre-

sumes a consideration. R. S. 1899, sec. 894; Bogie v. Nolan, 96 Mo. 85. The testimony proved the title in the plaintiff. The evidence given by Greenwood disproved the defense that the note sued on was without consideration, fraudulently obtained and improperly put in circulation. It showed that the note was given as part payment of the purchase price of real estate, and properly delivered and applied to the purpose for which it was intended. School Dist. v. Stocking, 138 Mo. 672; Fogg v. School Dist., 75 Mo. App. 159. The defendant's own testimony wiped out the so-called defense that she "signed it inadvertently and without intending to bind herself," and closed up her remaining avenues of escape. She admitted her signature and said she had no recollection of the circumstances under which she signed the note. Campbell v. Van Houten, 44 Mo. App. 231; Girard v. Car Wheel Co., 46 Mo. App. 79. She was estopped by her execution and acknowledgment of the deed of trust in evidence to deny the consideration, original validity and legal delivery of the note. Dawson v. Wombles, 123 Mo. App. 340. All the essential elements of the plaintiff's right to recover appear from the above, and the defendant having failed to sustain the burden of proving usury, past due indebtedness as a consideration of the collateral note given by Warner, and payment of Warner's debt, the plaintiff was entitled to recover, and the peremptory instruction was correct. Dawson v. Wombles, 123 Mo. App. 340. (b) There was no error in not submitting Johnson's testimony to the jury. It was not contradicted on any material point, nor was it at variance with the physical facts; neither was his credibility questioned. In such circumstances the jury is bound by the testimony and cannot reject it. Kavanaugh v. Wilson, 70 N. Y. 179; Engmann v. Immel, 59 Wis. 249; Evans v. George, 80 Ill. 53; Denton v. Carroll, 40 N. Y. Supp. 19; Littlefield v. Lawrence, 83 N. Y. Supp. 25; Boylan v. Meeker, 28 N. J. L. 274.

Requiring plaintiff to prove facts which the law presumes from the existence of other facts shown in evidence, casts upon him a burden he is not required to bear and is therefore erroneous. Dawson v. Wombles, 123 Mo. App. 345. (2) There was no usury in the transactions between Johnson and Warner. When Warner, on March 16, 1893, got from Johnson the further sum of $1000, received back his $2000 note cancelled, and gave a new note for $3000 without deduction, a new contract was created which purged any usury. There was no evidence that there was any charge for this or any subsequent transaction, and it is under this that the plaintiff claims title to the note sued on. Chadbourn v. Watts, 10 Mass. 121; McClure v. Williams, 7 Vt. 210; Smith v. Young, 11 Bush. 393; Gerlaugh v. Bassett, 20 Wis. 671; Bank v. Ayers, 7 N. J. L. 130; Bailey v. Lumpkin, 1 Ga. 392; Clark v. Phelps, 6 Met. (Mass.) 296; Hoyt v. Bridgewater Co., 6 N. J. Eq. 253. If the execution of a new note for a different amount was not the execution of a new contract, then the note of $2300, under which Johnson acquired the $4900 note, was but the continuation and renewal of the original transaction. The defendant failed to show any other charge of commission or interest than the original one of $100. The total interest at eight per cent per annum on the several amounts which Warner borrowed, for the time he had them, is $126.32. There is no usury in this. R. S. 1899, sec. 3706. The statute only affects the lien under which the alleged usurer claims, not the title into which it subsequently ripens. The plaintiff is not within the purview of the statute as he is not a "person holding or claiming to hold a lien." R. S. 1899, sec. 3710; Knight v. Putnam, 3 Pick. 184. The defendant's construction would destroy the title of every innocent purchaser at a pledgee's sale, where there had been usury in the loan, and make the statute violative of both the State and Federal Constitutions. To escape this it is

necessary to construe the statute as applicable only to direct and not collateral attacks upon the pledge or mortgage, and this is a collateral attack. (3) Even though there was usury, it was practiced upon Warner, and did not affect this defendant. She cannot plead it as a defense when sued upon another and different note, as to which there is no claim or pretense of usury. Hill v. Taylor, 125 Mo. 331; Zellner v. Mobley, 84 Ga. 746; Cody v. Goodnow, 49 Vt. 400; Littel v. Hord, Hardin (Ky.) 81; Stevens v. Reeves, 33 N. J. Eq. 427; Kendall v. Vanderlip, 2 Mackey 105; Clapp v. Hanson, 15 Me. 345; Knight v. Jutnam, 3 Pick. 184; Cutcheon v. Coleman, 13 Ind. 568; Biedler v. Malcolm, 105 N. Y. S. 642; Cook v. Dyer, 3 Ala. 643; Davis v. Tandy, 107 Mo. App. 442. And this is so where plaintiff acquired title to the collateral under a usurious transaction in the face of a statute more forceful than sec. 3710, R. S. 1899. Zellner v. Mobley, 84 Ga. 746.

*Boyle & Priest* and *Guy A. Thompson* for respondent.

(1) Plaintiff was not a bona fide holder of said note, but acquired it as collateral security for a usurious loan to Warner, the payee, and under the statute the pledge was void *ab initio,* and plaintiff could not enforce it, neither could he acquire any rights under it. R. S. 1899, sec. 3710; Keim v. Vette, 167 Mo. 389; Davis v. Tandy, 107 Mo. App. 442; Osborn v. Payne, 111 Mo. App. 29; Weimer v. Shelton, 7 Mo. 237; Adler v. Coyle, 155 Mo. 155; Kreitbohn v. Yancey, 154 Mo. 67; Coleman v. White, 158 Mo. 253; Bank v. Donnell, 172 Mo. 384; Saylor v. Daniels, 37 Ill. 331; Cumberland Co. v. City, 127 Fed. 187; Jones on Pledges & Coll. Secy., sec. 938; Colebrooke on Coll. Secys., sec. 134, *et seq.;* Gaithels v. Bank, 1 Peters 37; Daniels, Neg. Instr. (4 Ed.), sec. 175, p. 192, sec. 751. (2) The court erred in giving

the jury a peremptory instruction to find for the plaintiff for the full amount of the note with interest, because (a) the defendant was entitled to have the jury pass upon the facts in issue. Gannon v. Gas Light Co., 145 Mo. 502; Seehorn v. Bank, 148 Mo. 256; Wolff v. Campbell, 110 Mo. 114; Hahn v. Bradley, 92 Mo. App. 399; Hugemier v. Hines, 97 Mo. App. 346. (b) Under the evidence it was for the jury to say whether Johnson, when he took the note from Warner, knew the circumstances under which it was executed by defendant, and that she received no consideration therefor. Hahn v. Bradley, 92 Mo. App. 399; Wilson v. Riddler, 92 Mo. App. 335; Leavitt v. Taylor, 163 Mo. 158; Brown v. Hoffelmeyer, 74 Mo. App. 385. (c) Under the evidence it was for the jury to say whether Johnson had taken the note as collateral to secure antecedent indebtedness. See authorities above. (d) Under the evidence it was for the jury to say whether Johnson had sold this note as collateral and himself purchased it. Same authorities. (e) Even though Johnson did not know that the note was without consideration as to the defendant, yet inasmuch as it was, and Johnson held it merely as collateral, he could not recover more than the debt it secured. Grant v. Kidwell, 30 Mo. 455; Brown v. Calloway, 41 Ark. 418; Bell v. Bean, 75 Cal. 86; Hatcher v. Bank, 79 Ga. 547; Bank v. Butner, 60 Ga. 654; Valius v. Bank, 21 Ill. App. 126; Volette v. Mason, 1 Ind. 288; Bank v. Blevin, 46 Kan. 536; Lacroix v. Dubigny, 18 La. 27; Fischer v. Fischer, 98 Mass. 303; Trust Co. v. Bldg. Co., 166 Mass. 42; Rocher v. Ladd, 1 Allen 442; Bank v. Cannon, 46 Minn. 95; Haas v. Bank, 41 Neb. 754; Bank v. Roberts, 45 Wis. 373; Allaire v. Hartshorn, 21 N. J. L. 665; Morton v. Railroad, 79 Ala. 621; Bank v. Hemingway, 34 Oh. St. 393; Mayo v. Moore, 28 Ill. 428; Easter v. Minard, 26 Ill. 494; Gardner v. Maxwell, 27 La. 561; Bond v. Fitzpatrick, 4 Gray 934; Barmby v. Wolfe, 44 Neb. 77; Hayden v. Nicolette, 18 Nev. 290; Kelly v. Ferguson,

46 How. Pr., sec. 411; Bank v. Kingland, 5 N. D. 263; 1 Daniels, Neg. Instr., sec. 832 a; Jones on Pledges and Coll. Secy., sec. 675; 22 Am. and Eng. Ency. Law, 899. (f) Even though Johnson did not know the circumstances under which the defendant executed the note, yet if the defendant should be considered an accommodation maker thereof, still Johnson could not recover more than the debt the note was given to secure. Stoddard v. Kimball, 6 Cush. 469; Allaire v. Hartshorn, 21 N. J. L. 665; Duncan v. Gilbert, 29 N. J. L. 526; Bank v. Doyle, 9 R. I. 76; Maitland v. Bank, 41 Md. 540; Handy v. Sibley, 46 Oh. St. 9; Fischer v. Fischer, 98 Mass. 303; Williams v. Smith, 2 Hill 301; Bank v. Werst, 52 Ia. 685; Forestall v. Fuessel, 50 La. 249; Handy v. Hawkins, 141 Ill. 572; Jones on Pledges and Coll. Secy., secs. 673, 676; 1 Am. and Eng. Ency. Law, 369; Daniels, Neg. Instr., sec. 832 a.

FOX, J.—This is a suit on a note for $4900, payable on or before two years after date to the order of Edward S. Warner, dated September 15, 1892, with interest at eight per cent from maturity, and signed by Robert K. Woods and Lucy H. Woods, brought by the plaintiff, who claims Warner pledged the note to him on August 19, 1893, as collateral security for the payment of note of that date for $2300 made by Warner to plaintiff as payee.

The trial court gave a peremptory instruction to the jury to find for plaintiff, and they, after some reluctance, returned a verdict, on April 26, 1904, for $8668.01. The defendant filed a motion for a new trial, and that was sustained on April 3, 1905, and from this order granting defendant a new trial plaintiff has appealed.

The defendant was formerly Lucy H. Woods, the wife of Robert K. Woods, the maker or one of the makers of the $4900 note sued on. In the summer of 1892 one Greenwood, a real estate broker in St. Louis;

was negotiating with Edward S. Warner for the purchase of an option on a large tract of real estate in the western part of the city. It seems that there were some imperfections in the title to the property, and Warner suggested to Greenwood that, instead of giving the customary option, he would convey the property to Greenwood and take back from him notes secured by a deed of trust thereon, upon which notes he (Warner) could obtain the money necessary to cure the defects in the title. Greenwood agreed to this arrangement, but stated to Warner that he did not like to take the title in his own name and give his own notes, but said that one Robert K. Woods would take the title and give back the note and deed of trust, and he could use that note to secure money to perfect the title, if that would be satisfactory. Warner acquiesced in this plan, and thereupon conveyed the property to Woods, and himself prepared a principal note for $4900 and four interest notes for $147 each, all dated September 2, 1892, all bearing eight per cent after maturity, and all payable to the order of Edward S. Warner, the $4900 note being made payable on or before two years from date. He also prepared a deed of trust to be executed by Woods and his wife, conveying the property to Nathan Frank as trustee, to secure the payment of said notes. Thereupon said Robert K. Woods and Lucy H. Woods, his wife, the defendant, on the same day signed both the deed of trust and the said notes, and the principal one of said notes is the one sued on.

According to the testimony of plaintiff, James B. Johnson, Warner on the 16th day of January, 1893, borrowed $2000 from him, and executed his note for that amount payable in thirty days, and delivered and pledged to the plaintiff to secure the payment of said $2000 note the $4900 note which Warner had received from Robert Woods, and also the interest notes and deed of trust. Plaintiff says that he deducted $100

commissions for making the loan, and gave his check to Warner for $1900, and Warner gave him his note for thirty days for $2000, with eight per cent interest after maturity. This loan to Warner was renewed monthly, being increased and diminished in amount, until on August 19, 1893, it amounted to $2300, and on that date Warner gave to plaintiff his thirty-day note for that amount, pledging as collateral security thereto the said Woods note for $4900, the interest notes and the deed of trust. Plaintiff's testimony is not clear as to the amounts of these various renewal notes. On one view of it, the first note was for $2000, and at the end of thirty days another for the same amount was given, and then on March 10th he let Warner have $1000 more and he on that day gave him a note for $3000 for thirty days, and on April 12th he renewed that $3000 note for thirty days, and on May 15th Warner paid him $1000 and gave him another thirty-days' note for $2000, and when that came due borrowed $200 more and gave him another thirty-days' note for $2200, and on July 15th borrowed $200 more and gave him a note for $2400, and on August 19th paid him $100 and gave him another note for $2300. He persistently testified that he did not "think" he charged Warner any interest or commission except the first $100. This is the most favorable summary of his testimony that can be made. If it is true, then a calculation of interest on each note separately, for thirty days, and adding the amount on each, would make the interest for the seven months about $110; and whether or not the $100 paid by Warner at the outset be considered interest or commissions, it would not taint the transaction with usury unless we were to consider only the note for $2000 for thirty days given in January.

But that is not the whole of plaintiff's testimony. On the other hand, his deposition was taken prior to the trial, and at the trial defendant's counsel read him certain questions and answers from that deposition to

test the accuracy of his testimony, thus: "Q. In the testimony that you gave there was not this question asked you, and was not this your answer? 'Q. What became of that note?' Mr. Krum: Which note is that? Mr. Campbell: March 10, 1893. 'Q. What became of that note? A. I don't remember. Q. How many days did that run? A. I don't remember. Q. What became of that note? A. When the note matured I loaned him some more; I loaned him $1000 more, and made a note for $3000, and that $3000-note I again renewed on April 12, 1893. Q. For how much? A. The same amount. Due May 15, 1893. Q. What happened then? A. On May 15th he paid a thousand dollars and I took his note for $2300. Q. That was July 15th.' Is that true? A. Oh no, no, I didn't say anything of the kind. I said on May 10th he paid $800 and I took his note for $2200 due July 15th." Then Mr. Campbell proceeded to read from the deposition: " ' On May 15th, he paid a thousand dollars and I took his note for $2300.' A. No, $2200. 'Q. What was done after that? A. On July 15th he renewed it and added on $100 and made it $2400 due August 19th?' Q. That is right? A. That is right, yes, sir. Q. If he added only $100 to the $2200 note how did it make it $2400? A. But he added $200. That is your error." But it was not Mr. Campbell's error, it was clearly the witness's error.

On re-direct examination he testified that on March 10th Warner took up the $2000 note, and "increased the original sum to $3000," and gave a renewal note for that amount, and on its maturity on April 12th "he renewed it for three thousand and on the maturity he paid it down to $2000. That $2000 note matured May 20, 1893, and on May 20th he got $200 more, made it $2200, and that was due July 15, 1893, and on July 15th he got $100 more, making it $2400, and that was due August 19th, and upon August 19th he paid $100, and that left $2300, which note is there."

Previously in his cross-examination he had testified:
"The next note was May 20th, $2200. Q. He
paid a thousand? A. No, he didn't do anything of
the kind. He reduced the $3000 note to $2200." Sev-
eral times in the course of his examination he said
Warner paid him $1000 in May, and two or three times
he shifted from that and said he paid him $800. If his
deposition is true, plaintiff charged Warner $300
either as commissions or interest or both on May 15th,
for he says the note then coming due was for $3000,
and Warner paid him $1000 and he took his note for
$2300. In addition his testimony at the trial might
be held to mean that on July 15th, he charged Warner
$100 either as commissions or interest.

The petition alleges that plaintiff "is the bona-fide
owner and holder for value of a certain negotiable
promissory note made and executed by the defendant
herein as Lucy H. Woods," etc.

The answer consists (1) of a general denial; and
(2) allegations to the effect that when plaintiff signed
her name to the note sued on she was the wife of
Robert K. Woods, and owned no property of any kind,
was engaged in no business; that the note was entirely
without consideration; that it was signed by her "inad-
vertently, and without any intention of binding her-
self;" that she never delivered or authorized said note
to be delivered to the payee or any one else; that said
Warner, the payee, knew all of these facts when he
obtained possession of the note; that he was not a
bona-fide holder for value; that plaintiff received said
note as collateral security for past due indebtedness
of said Warner; that said past due indebtedness has
been paid; that the time for the payment of said past
due indebtedness was extended without the knowledge
or consent of plaintiff. "And further answering de-
fendant states that Edward S. Warner did on or about
the 16th day of January, 1893, borrow from plaintiff
the sum of $2000 and executed and delivered to said

plaintiff his note at thirty days for $2000, bearing, to-wit, six per cent interest, and did endorse and deliver to plaintiff the said two notes sued on in this suit, as collateral security, and as a pledge for the payment of the amount of money loaned at that time to the said Warner, upon said $2000 note. And defendant says that said plaintiff exacted from said Warner for the use and loan of said $2000 interest including commissions and brokerage paid by him to said plaintiff at that time, and deducted by plaintiff from said loan, amounting to more than 12 per cent per annum for the loan and use of said money. And defendant says that the loan was renewed from time to time until August 19, 1893, and on each renewal of said loan from plaintiff to said Warner, including the last one of August 19, 1893, plaintiff exacted usurious interest from Warner, in the way of interest and commissions or brokerage, largely exceeding 10 per cent interest, which rendered said loan usurious; that under the laws of the State of Missouri, said pledge of said notes sued on, to said plaintiff by said Warner, on said 16th day of January, 1893, and each renewal thereof, up to and including the 19th of August, were invalid and illegal, and said pledges were void from the time when said notes sued on were first pledged to plaintiff as aforesaid. And defendant says that the plaintiff never became legally entitled to the possession of either of said notes; and that plaintiff is not the legal holder of said notes, or either of them, and that plaintiff is not entitled to sue for or recover upon same, or either of them; and that defendant is not indebted to plaintiff upon said notes, or either of them, or upon any account whatsoever."

The reply is a general denial.

The defendant asked for instructions predicated on the grounds of defense set up in her answer, all of which were refused. The court, as said, instructed "the jury that under the law and the evidence in this case

plaintiff is entitled to recover and their verdict must be in his favor." After the jury retired they informed the sheriff that none of them would agree to a verdict for plaintiff and none of them would act as foreman. Thereupon the court called them back and directed them to retire and obey the instructions of the court, saying that "it is not for you to set yourselves above the court" and that "the court takes the responsibility, not you." Thereafter the jury returned a verdict for plaintiff, and defendant filed her motion for a new trial, which was sustained, and from the order of the court granting her a new trial plaintiff has appealed.

Our labors in disposing of the points at issue have been much lightened by the excellent briefs filed by learned counsel on both sides.


## OPINION.

It will be seen that this is an appeal by plaintiff in a law case from an order granting defendant a new trial after the court had coerced a verdict from the jury for plaintiff in a suit on a negotiable promissory note, of which plaintiff claimed to be "the bona-fide owner and holder for value," to which defendant had set up various defenses, namely, a general denial, a lack of consideration, that it was pledged to plaintiff to secure the payment of an usurious note, and that the note was pledged to secure a preceding indebtedness.


### I.

The order granting a new trial did not specify the grounds upon which the new trial was granted. In such case it has been held that the order will be sustained if any of the grounds set out in the motion are sufficient. [Metropolitan Mining Co. v. Webster, 193 Mo. 351; Hewitt v. Steele, 118 Mo. l. c. 473.] Trial courts have large judicial discretion in granting one

new trial, especially where the weight of the evidence is involved, and this court will not interfere with the exercise of that power unless it appears that it was unwisely exercised, so unwisely as to amount to an abuse thereof. Such a discretion does not mean a mere whim or caprice, but it means an honest attempt, in the exercise by the judge of his duty and power to see that justice is done, to establish a legal right. [Gould v. St. John, 207 Mo. 619; Rodan v. Railroad, 207 Mo. 392; McCarty v. Railroad, 192 Mo. 396; Taylor v. Railroad, 163 Mo. 183.] Where allegations in the petition are denied by the answer, and oral evidence is introduced by the plaintiff to sustain the issues on his part, the defendant is entitled to have the jury pass upon the evidence, though he offers no evidence at all. [Seehorn v. Bank, 148 Mo. 256; Gannon v. Gas Co., 145 Mo. 503; Hunter v. Wethington, 205 Mo. 284.] Where there is in a law case evidence which, if true, would establish any one of the good defenses pleaded in the answer, the court should not give a peremptory instruction to find for plaintiff, but should submit the issue to the jury. [Jenks v. Glenn, 86 Mo. App. 329; Dunbar v. Fifield, 85 Mo. App. 484; Hahn v. Bradley, 92 Mo. App. 399; Hugumin v. Hinds, 97 Mo. App. 346.]

If, therefore, the trial court should have denied plaintiff's peremptory instruction and have submitted the case to the jury, for an even stronger reason we should not reverse its action in granting defendant a new trial.

## II.

The answer pleaded that the note for $2300 given by Warner to plaintiff, to secure the payment of which the note in suit was pledged, was an usurious transaction, and, therefore, under the statute, plaintiff cannot recover on this $4900 note. To this plaintiff

replies, (1) that there was no evidence whatever of usury, and (2) that, even if there were, it was a matter between Warner and plaintiff and defendant cannot avail herself of it as a defense to a suit on her negotiable promissory note which plaintiff acquired for value before its maturity. We think there was testimony from which the jury might have found that there was usury, and that the exaction of usury from Warner by plaintiff would be a complete defense to this action.

Section 3710, Revised Statutes 1899, reads: "In actions for the enforcement of liens upon personal property pledged or mortgaged to secure indebtedness, or to maintain or secure possession of property so pledged or mortgaged, or in any other case when the validity of such lien is drawn in question, proof upon the trial that the party holding or claiming to hold any such lien has received or exacted usurious interest for such indebtedness shall render any mortgage or pledge of personal property, or lien whatsoever thereon given to secure such indebtedness, invalid and illegal."

This statute is unlike the usury statutes of most of the other States. The usual usury statute merely provides that excess interest shall be credited on the loan, and when suit is brought all unpaid usurious interest is forfeited. But this is a very much more comprehensive statute. It embraces not only the immediate transaction in which the usury was exacted, but it includes collateral transactions as well. It says: "In actions for the enforcement of liens upon personal property pledged . . . to secure indebtedness." The note for $4900 was personal property. Plaintiff introduced the agreement by which this $4900 note sued on was pledged to him as security for the payment of an "indebtedness" of a note for $2300. He claimed no other right to this note except its assignment to him by means of that agreement and its indorsement. The

suit then is to enforce a lien. The statute says that
"proof upon the trial that the party holding or claim-
ing to hold any such lien has received or exacted
usurious interest for such indebtedness, shall render
any  . . .  pledge of personal property  . . .  in-
valid and illegal." What indebtedness? The indebted-
ness the note was pledged to secure—the note for
$2300. Plaintiff in his petition avers that he is the
bona-fide owner of said $4900 note for value. That
averment is put in issue by the answer, not only by a
general denial, but by an express plea of usury. He
attempts to prove that averment by showing he ac-
quired the note through a transaction charged to be
usurious and therefore "invalid and illegal." In Keim
v. Vette, 167 Mo. l. c. 402, it was said: "The question
here is one of title. The essential muniment in de-
fendant's title is the pledge of these notes. If that
pledge rests upon usury, the statute declares it illegal
and invalid, or, as we commonly express it, void."

Is the pledge void only upon the plea of the
pledgor or his privies? Is it void only when the im-
mediate parties to the illegal transaction desire it to be
void? The statute does not say so. It says it is void "in
any case" when the validity of the lien is drawn in
question. It is not void because the immediate parties
to the transaction invoke its invalidity, but because the
General Assembly has said it is void. Public policy
condemns it, and it matters not from what source the
objection comes. We have declared it is a remedial
statute, and that, being such, it will "be liberally con-
strued," and that "it is the duty of judges to so con-
strue the act as to suppress the mischief and advance
the remedy." [Keim v. Vette, 167 Mo. l. c. 401.] In
that case Vette, the defendant, had received from Kuhn
some notes indorsed in blank, before maturity, and
had loaned him money thereon at a usurious rate of
interest, and in the suit of replevin by Keim, the true
owner, to recover the notes, this court held that Keim

could defeat Vette's right to the notes by showing that the note which Vette received from Kuhn was usurious and the pledge void and Vette's title to the notes illegal. If that case was rightly decided, then defendant in this can show that plaintiff's title to the note sued on was void because affected with usury. [See also Western Storage Co. v. Glasner, 169 Mo. 38; and Marx v. Hart, 166 Mo. 503.]

In Davis v. Tandy, 107 Mo. App. 437, the learned judge argues at great length to establish the rule that was formerly generally adhered to, that no one but the debtor or his privies could raise the defense of usury. And this court so announced in Mo. Real Est. Synd. v. Sims, 179 Mo. l. c. 686, and in Coleman v. Cole, 158 Mo. 253; but ELLISON, J., in the Tandy case felt compelled to follow the Keim case and held that the purchaser of mortgaged cattle could plead against the mortgage the defense that the mortgage note made by his vendor was usurious; and in the two cases decided by this court no reference is made to the statute. In our opinion the construction placed upon the statute by GANTT, J., in Keim v. Vette, supra, was correct, and we therefore hold that defendant could plead usury in the note for $2300 given by Warner to plaintiff as a defense to his suit on the note pledged to secure the payment of that.

There was evidence from which the jury would have been justified in finding that the $2300 note given by Warner to plaintiff on August 19, 1893, and the $2000 note given on January 16th, and the $2400 note given on July 15th, were all usurious. Plaintiff testified that the first note for $2000 ran thirty days and he charged $100 as commissions for making the loan. He was not entitled to any commission. It was his own money he was lending. [Osborn v. Payne, 111 Mo. App. l. c. 34; Western Storage Co. v. Glasner, 169 Mo. 38; R. S. 1899, sec. 3709.]

In Coleman v. Cole, 158 Mo. 253, McElhaney and Wickmire executed and delivered to the Aurora Bank their promissory note for one thousand dollars, payable in 120 days, with interest from maturity at eight per cent per annum. "The bank exacted forty dollars usury, as the plaintiffs contend, or discount, as the respondents contend, and placed $960 balance" to their credit. "When this note fell due, McElhaney and Wickmire executed a new note . . . for $1000, payable ninety days after date, with eight per cent interest from maturity, . . . this note was delivered to the bank, thirty dollars was exacted by the bank, and the balance of $970 was passed to "their credit." The court said: "If the transaction is a loan and the sum charged or exacted for the use of the money loaned exceeds the legal rate of interest, it is usury, no matter what words it may be clothed in."

In Kreibohm v. Yancey, 154 Mo. l. c. 85, this court said: "The test of usury in a contract is whether it would, if performed, result in securing a greater rate of profit on the subject-matter than is allowed by law." If that is the test, then Warner, if he had paid the $2000 note of January 16th at the end of thirty days when it fell due, would have paid $100 interest on $1900, or at the rate of 63 per cent per annum. [State ex rel. v. Bank, 48 Mo. 189; Adler v. Corl, 155 Mo. l. c. 155.]

And the giving of a renewal note in which is included usurious interest charges as a part of the principal does not purge the note of usury, whether the interest has been previously paid or not. If usury was exacted and received at the inception of the transaction it could not be purged by any number of renewals. [Citizens' Bank v. Donnell, 172 Mo. 384; affirmed in U. S., Nov. 28, 1904; Saylor v. Daniels, 37 Ill. 331; Tiedeman on Commercial Paper, sec. 180.]

Plaintiff's deposition tends to show that on May 15th, when Warner's note for $3000 matured, Warner

paid him $1000, and he took his note for $2300 for thirty days. That was usury, if done. It also tends to show that in July, when Warner's note for $2200 came due he got $100 more and gave his note for $2400 for thirty days, and that when that note came due in August Warner paid him $100 and he took his note for $2300 for thirty days. There was certainly enough in these facts to authorize the court to submit that defense of usury to the jury, which it was requested to do in an instruction asked by defendant.

### III.

The note for $4900 was absolutely without consideration. Neither Woods nor his wife received anything of value for it. Woods was simply a "straw man." He signed the note and deed of trust for no other purpose except to aid Greenwood and Warner to get the title to the real estate in such shape that Greenwood could handle it. Neither Woods nor his wife received any money or any lots or anything else of value. Defendant testified that she had no remembrance of the transaction whatever; that she had never before signed a note, and supposes that she must have signed this because her husband asked her to do so. Her averment in her answer that she "inadvertently" signed the note seems to have been literally true. It is stated in her counsel's brief, but is not shown by the testimony, that Woods was an employee in Greenwood's office. Plaintiff testified that he and Warner, before the notes were made, had officed together, and though they were on different floors at the time they were made, they had offices for many years prior to that time and afterwards in the same building. Plaintiff did not testify pointedly that he knew nothing of the infirmities of the note, or that it was without consideration, or the circumstances under which it was made.

There was nothing in the testimony that showed actual knowledge, and the burden was on defendant to show he had actual knowledge. [Leavitt v. Taylor, 163 Mo. 158; Brown v. Hoffelmeyer, 74 Mo. App. 385; Wilson v. Riddler, 92 Mo. App. 335.] But knowledge of the circumstances is evidence tending to show actual knowledge. [Ib; Hahn v. Bradley, 92 Mo. App. 399.] Warner did not testify, but the plaintiff was not entitled to have the court and jury take his evasive and unwilling testimony as true, but the allegations of the petition being denied and the lack of consideration being pleaded, and there being some testimony tending to establish actual knowledge, though it was the testimony of plaintiff alone, the defendant was entitled to have the jury pass upon it. [Seehorn v. Bank, 148 Mo. 256.] The testimony offered was not sufficient to show that defendant had actual knowledge that the note was devoid of consideration because of his knowledge of the circumstances under which it was made; but the trial court, because of plaintiff's evasive testimony and his unprepossessing manner on the stand, may have been of the opinion that his testimony was not credible and that upon a retrial defendant might be able to show he did have actual knowledge that the note was without consideration, and, therefore, granted her a new trial. We are not holding that the evidence on the point was sufficient to support a verdict for defendant; what we are asked to do is to condemn the trial court of an abuse of its judicial discretion in granting a new trial. That being the case, we are not willing to say that if the court was of the opinion plaintiff's testimony on the point of his actual knowledge of the infirmities of the note was not credible, and that on a retrial defendant might be able to show that he knew all the circumstances under which it was made and Warner acquired it and that he therefore knew it was without consideration, the court, having first given a peremptory instruction to find for plain-

tiff, abused its discretion by granting a new trial. No one, we apprehend, would contend that Warner himself could ever have been entitled to recover in a suit on this note in the face of a plea of lack of consideration; and while plaintiff, an indorsee before maturity for value, is not chargeable with a knowledge that it was without consideration, since the law presumes, in the absence of evidence to the contrary, that since he acquired it before maturity and for value he acquired it in good faith, yet if he actually knew what Warner knew he would be no more entitled to recover than would Warner himself had he never indorsed it to anyone. We, therefore, hold that the trial court did not commit reversible error in granting a new trial on this point. However, if on a retrial the evidence to show plaintiff's actual knowledge of a lack of consideration is no stronger than it was at the former trial, then this question should not be submitted to the jury, for it was not sufficient to overcome plaintiff's prima-facie case on the point of consideration.

## IV.

There was evidence that the note for $2300 for which the note sued on was pledged, was given to secure a pre-existing debt. In Goodman v. Simonds, 19 Mo. 107, it was held that where a negotiable note is transferred merely as collateral security for a pre-existing debt, and no new consideration is given for it, the assignee takes it subject to all the equities existing between the original parties to it. That case was fully and carefully reviewed by Burgess, J., in Loewen v. Forsee, 137 Mo. l. c. 41 *et seq.*, and a large number of Missouri authorities to the same effect were cited, and others to the contrary reviewed, and it was held that "the rule announced in the Goodman case . . . must be regarded as the settled law

230 Sup—26

in this State." Therefore if plaintiff received the $4900 note as security for a pre-existing debt, whether that debt was tainted with usury or not, he is chargeable with notice that the $4900 note was without consideration.

Prior to the trial of this case plaintiff had sued defendant on one of the interest notes for $147, executed at the same time the $4900 note was, and as a part of the same transaction, and at the trial of that case he gave this testimony: "Q. Was this indebtedness of $2300, which was evidenced by a note, money that you loaned Warner at the time you took these notes as collateral? A. That was for money that I loaned Warner at various times. I don't know the times exactly, but he was in court at the time I sued him and he admitted it. Q. Don't you recollect whether you had loaned him any cash on that day? A. I couldn't say. Q. Was it an indebtedness created on that day? A. I don't know when it was. Q. Was it an amount representing a balance? A. I don't know whether it was or not. Q. Can't you tell me whether you loaned him $2300 on that day, or whether you loaned Mr. Warner that amount? A. I could not tell you that. Q. You could not tell me whether that indebtedness was created that day or prior to that day? A. I could not say now, he owed me $100 one day, and $500 the next, and $200 the next, I could not say about that." Here was testimony tending to establish that the note for $2300 was for a pre-existing debt, and it was for the jury to say whether or not it was sufficient to establish that defense, which was pleaded. If no money was received by Warner when the $2300 note was made and if the $2300 note had been executed and delivered by Warner to plaintiff prior to the execution of the pledge agreement, then the note in suit was given for a pre-existing debt, and plaintiff cannot recover. Under the evidence that was a question of fact to be determined by the jury.

We would not be misunderstood on this point. It has been uniformly held by this court that the giving of one note in renewal of another is a continuation of the original indebtedness, and the extension of the time of payment by the giving of a renewal note is a valuable consideration for the renewal note.    If, therefore, when the $2300 note was executed another note was surrendered and the $2300 note was executed in renewal thereof, then the $2300 note was for a valuable consideration; and if the note in suit for $4900 was pledged at the time that $2300 note was executed then it was not pledged for a pre-existing debt.

## V.

The plaintiff, even if there was no usury in the case and the note sued on was not given as collateral security for a pre-existing debt, is not entitled to recover more than the amount of the $2300 note to secure which it was pledged. The $4900 note was without consideration, and was given as security for the payment of a $2300 note dated nearly one year later. Yet, under the peremptory instruction of the court, the jury were required to render a verdict for plaintiff for the full amount of the $4900 note, with eight per cent interest thereon from date, and they returned a verdict for $8668.01. To permit a judgment for that amount to be rendered in behalf of this plaintiff would be unjust and unreasonable. The law seems to be that, where the pledged note was supported by a valuable legal consideration, the pledgee may sue for the entire amount thereof, and so much of it as may be necessary to satisfy his claim may be retained by him, and the balance must be turned over to the payee of the note. But Warner is not entitled to have anything turned over to him. In such case, the note being without consideration, the pledgee is entitled to recover only so much of the note

as will satisfy his own debt. [Hatcher v. Bank, 79 Ga. 547; Exchange Bank v. Butner, 60 Ga. 654; Vanliew v. Bank, 21 Ill. App. 126; Farmers' Bank v. Blevins, 46 Kans. 536; Lacroix v. Derbigny, 18 La. Ann. 27; Fisher v. Fisher, 98 Mass. 303; New England Trust Co. v. Belting Co., 166 Mass. 42; Roche v. Ladd, 1 Allen l. c. 442; St. Paul Nat. Bank v. Cannon, 46 Minn. 95; Haas v. Bank, 41 Neb. 754; Union Nat. Bank v. Roberts, 45 Wis. 373; Allaire v. Hartshorne, 21 N. J. L. 665; Bank v. Hemingray, 34 Oh. St. l. c. 393; Morton v. Railroad, 79 Ala. l. c. 621.] And even if the extreme position be taken that defendant was an accommodation maker, as the trial court seemed to think, still a bona-fide holder of accommodation paper can recover, in an action against the maker, no more than the amount actually advanced. [Duncan v. Gilbert, 29 N. J. L. 521, 526; Atlas Bank v. Doyle, 9 R. I. 76; Stoddard v. Kimball, 6 Cush. 469.]

We shall quote from a few of these cases, because they were all decided by the courts of other States.

A very clearly reasoned case considering this question, and this question alone, is Farmers' Bank v. Blevins, 46 Kan. 536. There notes aggregating $5000 were transferred to the plaintiff bank by the payee to secure an indebtedness of $4367.63. The bank sued the maker for the full amount of the notes. The maker pleaded failure of consideration for the notes. The court stated the question for solution thus: "The only question for determination by this court is whether, in an action against the maker of notes which have been transferred before maturity to an innocent and bona-fide holder as collateral security for an indebtedness existing between the payee of such notes and the indorsee, the indorsee and holder is entitled to recover against the maker the full amount of such collateral notes, where such amount exceeds the indebtedness which they were transferred to secure, without regard to any defenses that exist between the orig-

inal parties to such notes, or whether, in such a case, the right of the plaintiff to recover is limited to the amount of the principal debt.'' The court proceeded to answer this question by holding that in such a case the true rule is that the pledgee could recover no more than the amount of the debt the note secured, and says: ''Where negotiable promissory notes, pledged as collateral security, are subject to equitable defenses, as between the maker and payee, and the collateral securities are of greater amount than the pre-existing debt of the payee to the pledgee, the recovery of the pledgee against the maker is limited to the amount of the pre-existing debt. . . . In this case we note the equitable defenses made by the pleadings. It is true that, under the rulings of the trial court, the defendant in error was not allowed to show them, but he should have been permitted to do so, for the purpose of limiting the recovery of the bank to the amount of the pre-existing indebtedness of Brady to the bank. . . . This same rule applies in case of fraud by the payee against the maker, or where there is a failure of consideration, or where.the paper indicates the amount it can be pledged for, or where the paper is subject to equitable set-offs, or in cases of accommodation paper, or in cases of misappropriation between makers, payees, or indorsers, and possibly in other cases.''

The case of New England Trust Co. v. N. Y. Belting Co., 166 Mass. 42, is this: The New York Belting Company executed notes payable to its own order and indorsed them in blank and delivered them to Potter Lovell Company, doing a general banking and note brokerage business, for the purpose of having them sold and the proceeds remitted. Instead of so doing the Potter Lovell Company, without paying the Belting Company any consideration, pledged them, and the pledgee sued. The court said: ''The Potter Lovell Company could not have enforced the notes now

in suit against the defendant, but the plaintiff as pledgee took them for value without notice before maturity, and therefore it can now recover upon them to the extent of its interest, if any, and no more. Ordinarily in such a case the pledgee can recover only to the amount of his claim, for which the notes were pledged; and if that claim has been reduced by partial payments, he can recover only to the amount of the unpaid balance."

In Union National Bank v. Roberts, 45 Wis. 373, it is said: "The general rule is that a plaintiff recovering on an instrument held as collateral is entitled to recover the entire amount. . . . The rule has been established in this court for twenty years, and still appears to be the proper one. If the holder of the collateral recover more than his principal debt, he recovers it for the use of his principal debtor. But there are exceptions to the rule. As between the pledgor and pledgee, when the securities pledged are the obligations of the pledgor, the pledgee can only recover his principal debt. For it would be worse than idle that a plaintiff should recover an amount which he would be obliged instantly to restore to the defendant. So where the collateral is in the hands of a bona-fide holder without notice of a good defense against his assignor, the general and better rule appears to be that the pledgee can recover the amount of his principal debt only (citing cases). There are other cases to the same effect. And this court holds this to be a proper exception to the general rule. For it would be manifestly unjust to allow a plaintiff to recover for the use of his assignor what the assignor could not recover for himself."

All the authorities are to the effect that if the pledgee recovers, he cannot retain for himself more than the amount of his claim against the pledgor, and the only reason he is permitted to have judgment for the full amount of the pledged note is that the pledgor

or payee has paid value for it, and is himself entitled to what remains after the pledgee's claim against the pledgor is satisfied, and to avoid a multiplicity of suits the pledgee will be permitted to recover the whole amount of the pledged note, and the excess will belong to the payee. But even in such case some of the authorities hold that the pledgor or payee should be made a party to the suit; but the entire reason of that rule fails where the maker owes the payee nothing and never did, and the reason failing the rule fails with it. In such case, where it is shown that the note is without consideration and therefore void as to the payee, the rule universally is, so far as we have been able to find, that the pledgee shall be permitted to recover only so much as the pledgor owes him.

Nor was this a matter that could have been regulated by the judgment. The rule of law in this State is that the jury must calculate the interest on a note sued on, and even where a peremptory instruction to find for plaintiff is proper the court cannot assume to calculate the interest, but must submit that matter to the jury. [Corbitt v. Mooney, 84 Mo. App. 645; Cates v. Nickell, 42 Mo. 169; Burghart v. Brown, 60 Mo. 24.] Therefore, even if a peremptory instruction had been proper in this case, it should have directed the jury to find for plaintiff for only the principal and interest of the $2300 note from its date. On that ground alone the order of the trial court granting a new trial was proper.

All these defenses having been pleaded, and there being some evidence to sustain each of them, and defendant having asked instructions upon each of them and assigned them in her motion for a new trial, the trial court did not abuse its discretion in granting said motion.

Entertaining the views to which we have herein given expression, the judgment of the trial court is affirmed. All concur.