Sam F. HAMRA, Jr., Respondent,

v.

BOONE COUNTY DEVELOPMENT COMPANY, a Missouri Corporation, Terry Porter, Paul Medley, and Ed Scott, Appellants.

No. 41265.

Missouri Court of Appeals, Eastern District, Division Four.

May 20, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 20, 1980.

Application to Transfer Denied Sept. 9, 1980.

Carl F. Sapp, Sapp, Woods & Orr, Columbia, for appellants.

David Collins, Collins & Grimm, Macon, Brett & Erdel, Mexico, for respondent.

SMITH, Presiding Judge.

Defendants appeal from a judgment against them for $57,224 actual damages and $14,550 prejudgment interest.

Plaintiff's cause of action is based upon a contract with defendants whereby the latter agreed to pay plaintiff $25,000 if defendants obtained a franchise for a Hilton Motor Inn in Columbia, Missouri, an additional $25,000 if the inn was built, and "2% of construction costs for any motor inn facility which exceeds 100 rooms." Execution of the contract was conceded, as was the obtaining of the franchise, erection of the inn, that the inn contained 132 rooms and

that defendants had refused to pay plaintiff the amounts called for in the contract. Defendants based their defense (and a counterclaim) upon alleged misrepresentations by plaintiff that he had a franchise for the inn in Columbia or that he had a "firm commitment" for one. The jury found for plaintiff on his claim and on the counterclaim and returned a verdict for $57,224. The court added to this prejudgment interest of $14,550.

Some factual background is required to understand defendants' contentions of error. Sam Hamra, a lawyer in Springfield, Missouri, became interested in the development of Hilton Motor Inns in Missouri. He acquired this interest through a friend, Dan O'Connell. O'Connell had become acquainted with Jim Cassell in the spring of 1971. Cassell was the midwest regional manager of Hilton Inns. He was the top man in the midwest region and answered directly to a senior vice-president of the company. Hilton was on an expansion program and Cassell was actively seeking to obtain quality franchises for Hilton Inns in the midwest, including Missouri. O'Connell had obtained franchises for Hilton in Michigan and Missouri and had worked closely with Cassell on those franchises and on others which he subsequently obtained. Hamra and O'Connell and a third party, Tom Kauflin, affiliated themselves to seek to obtain a franchise in Columbia, Missouri as well as some other Missouri cities. Hamra advised O'Connell that if he was going to spend his time and money in exploring these projects he needed assurances that Hilton would not allow someone else to go around Hamra and obtain the franchise. O'Connell, in Hamra's presence, called Cassell in Chicago and advised Cassell of Hamra's concern. In the conversation O'Connell asked Cassell if Hamra had the commitment for Columbia and Jefferson City. O'Connell testified that Cassell stated, "Yes, tell him he does not have to worry" and that O'Connell, immediately relayed this statement to Hamra. While still on the telephone and while holding the phone so Cassell could hear, O'Connell told Hamra "you have Mr. Cassell's firm commitment." Defendants objected to this testimony as hearsay. O'Connell further testified that when O'Connell was exploring the possibility of a franchise in a given city Cassell would make oral commitments that O'Connell would obtain the franchise if one was granted and that Cassell always kept his word.

After O'Connell's conversation with Cassell in Hamra's presence, Hamra devoted substantial time to exploring possibilities for a franchise in Columbia. He communicated directly and frequently with Cassell in these efforts. Ultimately Hamra was contacted by defendant Medley who expressed the desire of himself and his coventurers, Scott and Porter, also a lawyer, that Hamra examine a parcel of land owned by them as a possible site for a Hilton Inn in Columbia. At about this same time Hamra met Cassell personally for the first time at a party in Springfield and again raised his concern that after he had devoted his "time and effort on working on building Hilton Inns in other towns that you are not going to go around me for another group after I go in and do this work." Cassell replied to this: "Sam, this is the way I work with Dan and Tom, and you have my firm commitment for a franchise for the towns that you are working on." "—That is something you don't need to worry about."

Following this conversation Hamra had several contacts with defendants concerning their site and in February arranged for Cassell to go to Columbia to examine that site as well as others. Cassell thereafter suggested that a feasibility study be conducted only on defendants' site. In March defendants began a course of conduct which inferentially at least, indicated an attempt to bypass Hamra and deal directly with Cassell. Hamra's associates at that stage indicated their lack of interest in continued dealings with defendants and Hamra bought out his associates' interest in Royalty International, the development and management company they had formed to develop Hilton Inns. Cassell continued dealing with and through Hamra. When defendants would not respond directly to

Hamra he advised them in two letters that he had a "firm commitment" for the Hilton franchise in Columbia and would look for other sites if defendants continued to ignore him. Copies of these letters were sent by Hamra to Cassell. Defendants then began working with Hamra. Although the original discussions between Hamra and defendants had contemplated a lease of defendants' land to Hamra's company with Hamra to develop and manage the inn, in April defendants told Hamra they were going to develop the inn and he would not be a part of their development and management company. Further discussions ensued resulting in the execution on April 26, 1972, of the contract upon which suit was brought. In that contract Hamra agreed to cease any attempts to develop a Hilton Inn in Columbia and to endorse the application of defendants for a franchise. He did both and defendants obtained the franchise and constructed the Hilton Inn. Cassell died sometime prior to the trial.

Defendants' theory at trial was that Hamra misrepresented that he had a franchise for the Hilton Inn in Columbia or misrepresented that he had a firm commitment for one, and that these misrepresentations were the basis upon which defendants executed the contract. Hamra denied having represented he had a franchise, admitted having represented that he had a firm commitment for one, but denied that that representation was false.

■ Defendants' first contention is that the court erred in allowing the testimony concerning the telephone call between Cassell and O'Connell in which Cassell stated that Hamra had his firm commitment for a franchise in Columbia. Defendants contend that this testimony was hearsay. It was not. An essential element of a charge of misrepresentation, whether asserted as a claim or a defense, is that the representation was known to be false or was made without knowledge of its truth or falsity. *Latta v. Robinson Erection Co.*, 363 Mo. 47, 248 S.W.2d 569 (Mo. banc 1952) [2]. Whether, therefore, Hamra did or did not have a "firm commitment" for a franchise,

evidence that he reasonably believed he had one was pertinent to the issue being tried. Cassell's position with Hilton was such that Hamra could reasonably believe he had a commitment if Cassell told him he did. Cassell's statement to O'Connell, which was immediately transmitted to Hamra, was relevant because it went to Hamra's reasonable belief of the truth of his representation. The fact that the statement was made and was transmitted to Hamra was relevant without regard to the truth of what Cassell said. Where a statement of a third party is offered because of the fact that the statement was made and is not offered for the truth of the statement, it is not subject to a hearsay objection. *Bond v. Wabash Railroad Company*, 363 S.W.2d 1 (Mo.1962) [3, 4]. The court did not err in allowing the testimony.

■ Defendants' second contention involves a similar claim concerning a document furnished by Cassell to Hamra in April 1972, giving an estimated range of operating results for a Columbia franchise. Again, the document was not offered for the truth of its contents, but to establish that Cassell, as late as April, was dealing exclusively with Hamra in the development of the Columbia franchise. It was not error to admit that document into evidence. In addition, defendants have failed to preserve the point. The objection at trial was the general objection of irrelevancy without explanation. Such an objection preserves nothing. *Teters v. K. C. Pub. Serv. Co.*, 300 S.W.2d 511 (Mo.1957) [2]. On appeal and in the motion for new trial the exhibit is challenged as hearsay. That objection was not made at trial and defendants may not now premise error on a different ground. *Browning v. City of St. Louis*, 384 S.W.2d 868 (Mo.App.1974).

■ Defendants' next contention is that the court erred in giving plaintiff's converse instruction on defendants' counterclaim because it improperly used the words "if you do not believe" and used a conjunction to separate the two acts of fraud. We have considerable doubt that even if error were present we could find prejudice. The

challenged converse arose on the counterclaim. Plaintiff's claim and defendants' counterclaim were mutually exclusive. No error is claimed in the instructions on plaintiff's claim so the jury's finding for plaintiff on his claim would preclude recovery by defendants on their counterclaim. At any rate we find no error.

Defendants' instruction on the counterclaim directed a verdict for defendants if the jury found (among other things) that plaintiff "represented that he had a Hilton Inn franchise or . . . represented that he had a firm commitment for a . . franchise . . . ." and that either representation was false. Plaintiff admitted that he represented he had a firm commitment and denied he represented he had a franchise. He further denied the former representation was false and admitted that if he represented the latter that representation would have been knowingly false. Plaintiff's converse was as follows:

> "Your verdict must be for plaintiff on defendant's counterclaim against plaintiff if you do not believe that plaintiff represented to the defendants that he had a Hilton Inn franchise and that his representations that he had a firm commitment for a Hilton Inn franchise was false."

We do not feel it necessary to wind our way through the MAI and its Notes on Use to find an analogous, albeit different, situation than is presented here. Defendants' verdict directing instruction hypothesized two uncontroverted issues of fact—that plaintiff represented he had a firm commitment for a franchise and that if he represented he had a franchise such a representation was false. It also hypothesized two controverted issues—that he represented he had a franchise and that his representation that he had a firm commitment for one was false. Defendants do not suggest, nor do we perceive, how plaintiff could have more clearly and concisely conversed the verdict-

director than by the method that was used. It squarely presented to the jury the two controverted issues it must decide in a manner free from argument, in concise form, and without confusion. We find no error.

■ Defendant's final point concerns damages. Initially it is contended that the court erroneously gave MAI 4.09 modified instead of MAI 4.01. This contention is based upon the premise that the damages were in dispute. *See* MAI 4.09 Notes on Use. They were not. If plaintiff was entitled to recover, he was entitled to recover $50,000 plus 2% of the construction costs over one hundred rooms. This latter provision could mean 2% of the total construction costs or 2% of the costs for the rooms over 100. The court, as a matter of law, made the latter interpretation which was more favorable to defendants than the former interpretation. The number of rooms, (132) and the total construction costs were uncontroverted and in fact agreed to by all parties. Computation of the cost of the rooms over 100 and what 2% of that figure was, required only a mathematical calculation. This is what the court instructed on and we find no error.

■ Secondly, it is contended that because the question of prejudgment interest was not submitted to the jury and was not included in the verdict, the court lacked power to include it in the judgment.[1] This matter was not raised at the time the court entered its judgment immediately after the verdict, nor in the motion for new trial. We can review it then only as a matter of plain error. Plaintiff contends that pursuant to *Van Noy v. Huston*, 448 S.W.2d 622 (Mo.App.1969) and *State ex rel. Missouri Pacific Railroad Company v. Moss*, 531 S.W.2d 82 (Mo.App.1975) the matter has been waived by defendants. Both of those cases involved judgments which had become final for all purposes before defendants raised the issue of prejudgment interest.[2] Here the matter is not yet final. Because

1. The trial court allowed interest only on the two $25,000 payments. No interest was allowed on the 2% payment. Plaintiff makes no complaint about this.

2. In *Van Noy* the judgment had not been appealed from and in *Moss* the matter was not raised until after the appeal had been concluded.

of the statements contained in some of the cases that the court lacks the power to add prejudgment interest to the verdict we do not believe we can hold that defendants have waived the matter.

We find no recent cases precisely on point. Prior to 1936 considerable confusion existed as to the authority of a trial court to direct a verdict on the issue of damages and to compute the prejudgment interest to which the plaintiff was entitled. In *Beekman Lumber Co. v. Acme Harvester Co.*, 215 Mo. 221, 114 S.W. 1087 (banc 1908), the court affirmed the action of the trial court in computing the amount of interest and directing the jury to return a verdict for the amount of the account owed plus that amount of interest. In upholding the trial court's action the Supreme Court relied upon the statute, currently Sec. 408.020, R.S.Mo.1978, which provides that interest is recoverable as a matter of law when a liquidated debt becomes due and payable on a written contract or an account.

In *Johnson v. Grayson*, 230 Mo. 380, 130 S.W. 673 (1910), the opposite conclusion was reached by Division 2 of the Supreme Court. There it was held that even where the damages are fixed as a matter of law the jury must calculate the interest due. In turn *Boutross v. Miller*, 223 S.W. 889 (Mo. 1920) while acknowledging that the *Beekman Lumber* case was more in accord with reason than *Johnson*, nevertheless followed *Johnson* and in a divisional opinion overruled the en banc decision in *Beekman*. Both *Johnson* and *Boutross* were based upon the provisions of a statute, now Sec. 510.270 R.S.Mo.1978,[3] which requires the jury to assess the amount of recovery in an action for the recovery of money. The Supreme Court followed *Johnson* and *Boutross* in *Mercantile Trust Co. v. Dulle*, 282 S.W. 414 (Mo. banc 1926) although again criticizing the application of present Sec. 510.270 to a case where the recovery is subject to precise mathematical computation.

The matter came before the Supreme Court again in *Home Trust Co. v. Josephson*, 339 Mo. 170, 95 S.W.2d 1148 (banc 1936). There the court concluded that the *Beekman* decision was correct and overruled the Supreme Court and Court of Appeals cases to the contrary. Because of its applicability to the present case, we quote substantially from the *Home Trust* opinion:

"It seems rather strange that the principle applied in *Beekman Lumber Co. v. Acme Harvester Co., supra,* has been so completely ignored. The Statute there referred to, forbidding the reversal of judgments except for error materially affecting the merits of the action, is a sensible and wholesome provision. It has been applied many times. It should be considered along with other statutory provisions relating to practice and procedure. In a case where the *amount* to be recovered, if the plaintiff is entitled to recover at all, is not in dispute, and depends as to interest, merely upon mathematical computation based upon a rate of interest and a period of time fixed by the contract sued on and about which there is no controversy, and the computation of interest is admittedly correct, it is difficult to see how the rights of the parties are prejudiced or the 'merits of the action affected' by having the court, rather than the jury, perform the mathematical process of computing the interest. It has been held competent, even under our present rule, for the court to instruct the jury to find for a stated amount (the principal), and for interest at a stated rate from a stated date . . . [Citations omitted] . . . Cannot the court figure the interest as well as the jury? And if the jury calculates it erroneously, may not the court require correction of the error? And can either party be prejudiced by the fact that the court, rather than the jury, figures the interest, if it be calculated correctly? The questions answer themselves." (l. c. 95 S.W.2d 1154–5)

The court's holding was:

"We hold that where, as in the instant case, the plaintiff is entitled to a directed

3. *See also* Rule 71.06.

verdict and there is *no controversy* as to the amount, and the contract sued on calls for interest at a stated rate for a certain time, so that the ascertainment of the amount of interest is only a matter of mathematical computation, it is not error for the court to make the calculation and direct a verdict for the total amount due, including the interest." (l. c. 95 S.W.2d 1156)

*Home Trust* represents the last time that the Supreme Court en banc has squarely addressed this issue. Some appellate courts, including this district have subsequently reverted back to the cases overruled in *Home Trust* to support a conclusion that a jury must always assess prejudgment interest. *See* for example *State ex rel. State Highway Commission v. Green*, 305 S.W.2d 688 (Mo.1957) [4–6]; *Laughlin v. Boatmen's Nat. Bank of St. Louis*, 354 Mo. 467, 189 S.W.2d 974 (1945); *Van Noy v. Huston, supra* [1–3]; *Burgdorfer Electric Co. v. Voyles Construction Co.*, 432 S.W.2d 387 (Mo.App.1968) [8].[4] But those cases involved circumstances in which the amount owed or the date on which the debt became due was in dispute. And in *Allison v. Mountjoy*, 383 S.W.2d 314 (Mo.App.1962) it was pointed out that *Home Trust* held that Sec. 510.270 requires the jury to determine the damages and interest only when that is an issue. *Allison* held that where damages are not an issue the trial court which could have directed a verdict on that issue may correct the jury verdict as to damages and enter judgment accordingly. *State ex rel. Witte Hardware Co. v. McElhinney*, 231 Mo.App. 860, 100 S.W.2d 36 (1937) held that where the jury refuses to return a verdict as directed the court itself is authorized to enter a judgment for the established damages and for prejudgment interest as computed by the court.

We recognize that appellate courts have treated the determination of damages and prejudgment interest by the jury as "a sacred cow." *Johnson v. Girven's Estate*, 370 S.W.2d 163 (Mo.App.1963). But it is clear from *Home Trust, supra; Allison, supra*; and *McElhinney, supra*, that no rule of law stands in the way of permitting the trial court to make those determinations where the question is one of law.[5] Here they are. By statute, Sec. 408.020, plaintiff was entitled to prejudgment interest at the rate of 6% from the date payment became due. The statute engrafts upon the contract that interest rate from that time. *Sebree v. Rosen*, 374 S.W.2d 132 (Mo.1964) [20, 21]. The amount of the payment due and the date on which it became due were conclusively established by uncontradicted evidence and were conceded by both plaintiff and defendants. Clearly, the court under the above-cited cases could have directed the exact amount of plaintiff's recovery, including interest, upon a jury finding that plaintiff was entitled to recover pursuant to the contract. Had the jury refused to heed this direction, the court could have corrected the verdict to reflect the proper recovery and entered judgment accordingly. We can find no basis for holding that under those circumstances the court committed plain error when it added to the jury verdict prejudgment interest to which plaintiff was entitled as a matter of law.

Judgment affirmed.

SATZ and SIMON, JJ., concur.

---

4. Several of these cases rely ·upon *Meffert v. Lawson*, 315 Mo. 1091, 287 S.W. 610 (1926) which is a pre-*Home Trust* case which relies in turn on *Boutross* and *Johnson*. All three were overruled in *Home Trust.*

5. *Allison v. Mountjoy, supra*, pointed out that it is the better practice to require the jury to return a verdict for the damages and interest, but such a procedure is not in all cases mandatory.